WESTINGHOUSE ELECTRIC & MFG. CO. v. CONDIT ELECTRICAL MFG. CO.

(Circuit Court, D. Massachusetts. December 28, 1911.)

No. 327.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CIRCUIT-BREAKER FOR ELECTRICAL DISTRIBUTION SYSTEM.

The Wurts patent, No. 570,416, for a circuit-interrupting means for systems of electrical distribution, claims 3 and 4, which cover a combination in one system of an automatic circuit-closing device actuated by an excessive current in the main or distribution circuit with remote control devices for closing local circuits at the will of the operator, are not for a mere aggregation, but a true combination of substantial utility and disclose invention; also *held* infringed.

In Equity. Suit by the Westinghouse Electric & Manufacturing Company against the Condit Electrical Manufacturing Company. On final hearing. Decree for complainant.

Richardson, Herrick & Neave, for complainant.

Edward P. Payson, Edwards, Sager & Wooster, and C. V. Edwards, for defendant.

HALE, District Judge. This suit in equity raises the question of validity and infringement by defendant of claims 1, 3, and 4 of letters patent No. 570,416, issued October 27, 1896, to the complainant as assignee of A. J. Wurts. The patent relates to circuit-interrupting means for systems of electrical distribution. The claims in issue are as follows:

"1. In a multiphase system of distribution, the combination with a circuit-interrupter common to all the phases of the system, a normally open local

circuit and a controlling-magnet included therein, of circuit-closers for the local circuit, one for each phase of the system, an overload upon any one of the main circuits serving to actuate its circuit-closing device and thus close the local circuit."

"3. The combination with a plurality of systems of electrical distribution provided with circuit-interrupting devices, controlling-magnets and normally open local circuits therefor fed by an independent source of current, of means actuated by an excessive current in any one of the main circuits for closing the corresponding local circuit, and a plurality of circuit-closing devices located at a distant point and each operated at will to close the corresponding local circuit.

"4. The combination with a plurality of systems of multiphase electrical distribution provided with circuit-interrupting devices, one for all of the phases of each system, and controlling-magnets· therefor, of a local circuit for each of said magnets, means actuated by an excessive current of any phase to close the corresponding local circuit, and a plurality of switches independently operated at will to close any one of said local circuits."

In the specification the inventor, Wurts, describes the scope of his invention:

"My invention relates to circuit-interrupting means for systems of electrical distribution, and has particular reference in some of its more important features to multiphase circuits, though not in all respects limited to use in such relations. The objects of my invention are, first, to provide an actuating or controlling means included in a normally open local circuit which is closed by the action of an overload in the main or distribution circuit, and prefera· bly at a suitable predetermined interval after the occurrence of such overload; second, to provide a circuit-interrupter common to all the phases of a multiphase system, with a controlling or actuating magnet included in a normally open local circuit, which will be automatically closed by the action of an excessive current in a conductor for any one of the phases and preferably at a predetermined interval after the occurrence of such excess of current, and, third, to provide a means, located at a point more or less remote from the circuit breaker or breakers, whereby any one of a plurality of such circuit-breakers may be electrically controlled at will."

The inventor then proceeds by diagrams to illustrate the details of his apparatus, and then states in general the results which he has sought to obtain:

"It is obvious from the illustration and foregoing description that, whenever the current in any one of the conductors exceeds a predetermined limit. all of the circuits from that particular generator will be automatically interrupted. It will also be understood that any number of generators and circuits may be connected with the local circuit in the manner shown. It will also be understood that this use of a local circuit for energizing the controlling-magnet for the circuit-breaker may be employed in connection with a single-phase system of distribution, if desired, and hence I do not limit my invention to use in connection with multiphase circuits, as shown in the drawing. It being often desirable in large power-houses to open any one of several circuit-breakers from a given point, which may be more or less remote from such circuit-breakers, I extend the local-circuit conductors to the point from which it is desirable to actuate the circuit-breakers and locate at this point suitable circuit-closing devices, one for each circuit-breaker. These circuit-closing devices may be push-buttons or any other desired form of hand-operated means whereby the local circuit may be closed through any one of the controlling-magnets when it is desired to open the circuit-breaker with which such magnet is connected."

In his testimony, the expert, Prof. Clifford, points out some elementary facts which relate to the art, and are important in the study of the case. He shows that the generation, transmission, and distribution of power electrically may be accomplished by either direct or by

alternating currents.  A direct or continuous current maintains unchanged the direction of its flow in the electric circuit.  In a direct current system, therefore, we are concerned with a sensibly steady flow of electrical energy already established.  An alternating current alters its strength and reverses its direction in the circuit periodically with the passage of time, these variations of the current taking place according to a definite law.  He further points out that alternating current systems are usually classified as either single-phase (monophase) or polyphase (multiphase).  A single-phase system generates, transmits, and distributes a simple or single alternating current.  A polyphase system generates, transmits, and distributes two or more such currents which may be combined in a number of different ways.  The polyphase system is characterized as two-phase, three-phase, etc., according to the number of such simple alternating currents as are combined for purposes of utilization.  The phase difference between two simple alternating currents is determined by the difference in time at which corresponding values of the currents in question occur.

It is further pointed out as a result of this well-known property of three-phase currents that, instead of having three complete circuits for the three phases of the current, what is called a "three-wire" system may be employed.  Under this system, the current may flow outwardly over two wires and return through the third wire, or it may pass outwardly through one line and return through the other two lines; the outgoing and incoming currents being always equal.  In a two-phase system, three wires may also be used instead of two complete circuits, the two currents flowing out on two of the wires and both returning by a third or "common return" wire.

By means of the foregoing diagram illustrating the Wurts patent, the learned counsel for complainant points out the leading elements of the patent, substantially as follows: The Wurts patent shows diagrammatically at 1, and also at 2, a "two-phase generator" provided with two conductors, 3, 4, for the two phases of current and a common return conductor 5; so that in each of the two systems of distribution illustrated one current or phase flows round the circuit 3, 5, and the other current around the circuit 4, 5. The conductors are shown as broken off at the bottom of the diagram, after passing through circuit-closers 6 and circuit-breaker contacts 7, 8, to be referred to, and the circuits are then supposed to be completed through the lamps, or whatever other objects are used as "translating devices" in the circuits.

The Wurts patent is concerned with means for interrupting or opening all the phases of any one of the multiphase systems involved (two are shown, but there may be any number), either automatically upon the occurrence of an "overload" on any main line, or through an operator at some remote point who moves a switch or equivalent device—what is called "remote control."

Each "circuit-breaker" is diagrammatically shown as carrying four contacts 8, two on each side, for bridging the two contacts 7 in the wire 3 and in the wire 4, respectively. Thus, when the circuit-breaker moves downwardly, it breaks each of the two circuits, leaving a gap on each side between the two contacts 7. It is not necessary to break the third wire 5, to open the circuits; and that wire is continuous and not affected by the circuit-breaker, as illustrated. The circuit-breaker is held in its closed position by means of a catch 9, diagrammatically shown, which is connected to an armature 10 governed by the "controlling-magnet" 11. When this magnet is energized by an electric current, it attracts its armature, raises the latch, and releases the circuit-breaker, which interrupts the circuits for each "phase." The energizing of this magnet is brought about by closing the normally open local circuit from the source of electric power 14 (shown as a transformer) through this magnet. This closing is accomplished automatically by means of one of the circuit-closing devices 6, shown diagrammatically, which, on the occurrence of an overload or excessive current (in the line 3, for example), closes the local circuit through the magnet: that is to say, the local circuit goes from the source of power 14 along the conductor 12, through the circuit-closer 6, around to the right and then down, then up around the magnet 11 to the wire 13, and back to the transformer. This local circuit, with its own source of energy, is open at 6 until the occurrence of the overload in the line 3, as above stated.

But this is not the only means of closing the local circuit through the magnet 11 to actuate the circuit-breaker. A remote-control switch 18, shown at the lower right-hand corner of the drawing is connected by the lines 15, 16 in the same local circuit, embracing the same source of power 14 and the same magnet 11. On closing the lower of the two switches shown, the local circuit is completed over the wires 15 and 16 through the controlling-magnet 11, as before, thus releasing

the circuit-breaker. Thus, there are combined with the normally open local circuit, containing the magnet *11* and the source of power *14*, two alternative devices, the automatic circuit-closer *6* and the remote-control switch *18*, either one of which may be operated to close the local circuit, and thereby actuate the multiphase circuit-breaker, and open simultaneously all the phases of the main circuit in question, the circuit-closer *6* being operated automatically, and the switch *18* being operated at the will of the attendant. The above is a substantial statement of the combination, brought before the court, and claimed as the invention in the patent in suit. I have already quoted the most material portion of the specification showing the objects of the invention, and the three claims involved in the suit. The drawing shows two systems of multiphase electrical distribution. In actual practice it is pointed out that there may, of course, be any number of them, each having its circuit-closers as shown at *6* in the drawing, its controlling-magnet as shown at *11*, and the multiphase circuit-breaker, each magnet being energized from one and the same source of power (shown at *14*) upon closing its local circuit; and in each system the closing of the local circuit may be brought about either automatically by the circuit-closer *6*, or at the will of the attendant by'the switch *18*. If there were a number of such multiphase systems, there would be a number of such switches; but only one source of current *14*, would be needed for all the local circuits. It is evident that by means of small hand switches as shown at *18*, all located at one point, the operator may at once open any or all of the circuit-breakers, no matter where or how far from each other they are located. It is further shown that the occurrence of an overload in any phase of any one of these multiphase systems would automatically close the appropriate local circuit, and throw open all the phases of that system through the circuit-breaker, while the attendant could close the same local circuit, and thereby open the same circuit-breaker by manipulating the appropriate switch.

Mr. Rowe, an electrical engineer called by the complainant, sets forth the practical value of the Wurts invention as follows:

"Automatic overload circuit-breakers are of great importance under many conditions of operation. For instance, if electrical energy is being supplied to a street.railway system and the trolley lines should drop on the rails, or if any of the apparatus on the cars became deranged so as to cause what is termed a short circuit, it is of the utmost importance that means be provided at the generating station so that the particular electrical circuit which is in trouble shall be automatically cut off from the system so as to prevent the burning up of generating apparatus in the power station, or doing much damage to the cars themselves. It is also essential that the individual line which is in trouble be disconnected from the station in order that the entire system be not shut down on account of the trouble at this particular point. An automatic circuit-breaker will relieve the system, and prevent interruption of service. Correspondingly, if the wires transmitting power for polyphase distribution should be blown together by storms, so that the uninsulated conductors of separate phases are in contact, or if large birds connect the wires together by flying through the wires of a transmission system, it is obviously necessary for the same reason as described previously that alternating circuits be provided with automatic protection to the lines."

Mr. Rowe was also asked to give a practical illustration of the importance of providing for opening the circuit-breaker at will from a

distant point by means of electrical connections, and upon that subject gave the following testimony:

"In a large power-house in which great quantities of energy are distributed through numerous circuits, and in cases where a large number of generating units are employed, it is frequently necessary that the circuit-breakers and switching devices be located in the most convenient place with respect to the machines, transformers, and electrical circuits to be controlled, which involves their distribution in various remote points in the power station. Besides this, the switching devices are often very large and sometimes built in masonry cells, so that they cannot be collected together in a small area. Under these conditions, it is of great importance that the means of opening the circuit-breakers at will be placed at a point convenient to the operator, and at the same time that the entire control be placed in as small a space as possible, as it is obviously impossible for an operator under such conditions to run about from one switch or circuit-breaker to another in times of emergency to open a circuit. Very often these circuits carry dangerously high potentials, and under some conditions an operator has been known to get confused and to lose his head in cases of emergency where he has been, obliged to go to a switch or circuit-breaker and open it. For this reason, in some power stations the control of this apparatus is removed to a separate isolated point, where the noises from arcs and the distracting incidents due to the flashes and burning of enormous short circuits are not perceived by the operator, and he is able to perform his duties intelligently."

In reference to the utility of the alleged combination, Mr. Rowe further testified, as follows:

"Upon the failure of any part of the apparatus to act properly by means of the automatic relay, such as sticking or derangement in the relay, it is possible for the operator to trip the device by hand.

"In the case of the failure of the circuit-breaker to open the circuit from any cause, or when in opening the circuit a circuit-breaking should become badly damaged so that it was unable to perform its function, or if an arc should start, short circuiting any part of the system directly connected to these circuit-breakers, such as an accidental ground connection, it is possible with this system for the operator to immediately open all circuits supplying power to the system by means of the hand-tripping devices, and often prevent enormous damage and serious interruption of service."

Upon the same subject Prof. Clifford testified:

"The ability to control the opening of the various individual circuits in an extended installation of apparatus from a central point possesses distinct advantages so far as the arrangement of apparatus is concerned, and also so far as the concentration of the operator on the particular thing which he is to accomplish is concerned. This system of centralized control has come, therefore, to be very generally adopted; indeed, is adopted almost without exception, in the large power-houses.

"I may give as an instance of the advantage of its use the opening of the circuit in case it is desired to make repairs on some particular line under conditions in which the relation of that line to the other lines of the system must be definitely known. The possibility of opening the line which is to be repaired from a central control board under the supervision of an operator who may have immediately before him the layout of the entire station obviously results in much greater safety both to life and to the apparatus."

1. The learned counsel for defendant urge that the Wurts device is a mere aggregation, and does not involve invention; that all the features in it are old, and that, put together, they produce no new and useful result; that there is no novelty in devices which cause the overload upon an electric system to interrupt the circuit that is overloaded; that there is no novelty in providing means whereby any one

of the plurality of circuit-breakers may be electrically controlled at will; and that there can be nothing new or useful in putting together these two elements; that, given the two old devices, it required nothing more than the work of a mechanic skilled in the electrical art to unite the two in a machine; and that the two devices, so united, are not employed simultaneously, but at different times, and do not constitute an electrical combination, but a mere aggregation. They insist that the file wrapper of the patent in suit shows that Wurts admitted lack of novelty in reference to the several features of the patent; that, when Wurts made his application in the Patent Office, he originally had certain other claims, designed to cover the use of a local circuit common to a plurality of systems of distribution, also the use of a local circuit common to a plurality of systems of multiphase circuits, and also a distribution circuit, each of the above in combination with hand operated means for closing the local circuit; that all these claims were rejected by the examiner upon reference to patent No. 396,940 to Knowles, and No. 313,091 to May, and upon a certain English patent; that the examiner in rejecting these claims held that the plurality of systems was simply a duplication of the number of main lines; that Wurts thereupon abandoned the subject-matter involved in the three claims to which I have referred. The defendant argues that Wurts must be held to have acknowledged that there was no novelty in the application of the hand control closing means to multiphase electrical distribution systems, and that he must be held further to have acknowledged that there was no invention in adding the hand operated closing means to the automatically operated closing means. The defendant reasons that, in view of this record, Wurts is now estopped from claiming that his showing of a plurality of systems is anything more than duplication of the system, that there is any invention in applying the circuit-interrupting devices in a direct current system, or systems employing currents of other character, to a multiphase or polyphase system, or that there is any invention in providing both a hand operated device and a device operated automatically on overload to close a normally open electric circuit, and thus cause the operation of the circuit-breaker; but the sole ground upon which the claims in suit must stand, if upheld, is that Wurts provides a circuit-closer in each and every circuit, or phase, to be opened, whereby upon excessive current flow in any of said circuits all will be opened. The defendant further cites as anticipatory in the prior art the Ahearn patent, No. 252,859.

After a careful study of the action of the Patent Office in the matter of the Wurts patent, I am of the opinion that the defendant's contention is not sustained. I find that claims 3 and 4, the distinct combination claims of the patent in suit, were allowed by the examiner, after the citation of the Knowles and May patents, although these two patents are now relied upon by the defendant as the leading references for invalidating claims 3 and 4. The three claims rejected by the Patent Office were for combinations which embraced less than the Wurts combination as covered by these two claims. It seems clear that the Patent Office regarded the combination set out in claims 3 and 4, which are now the leading claims in controversy, as being clearly patentable,

over anything produced in the prior art. It appears that, after examining the references now relied upon by the defendant, the Patent Office found the combination set forth in claims 3 and 4 to be a patentable invention; such combination producing a device wherein the automatic circuit-closers and the switch operated at will for each system are arranged and connected in such manner as to co-operate with one and the same local circuit, also with the same controlling magnet and the same source of current.

Upon examination of the references in the prior art, it appears that the Knowles patent was for an automatic electric cut-out. The apparatus invented by Knowles has a normally open local circuit, closed upon the occurrence of an overload in the main circuit, so as to energize a magnet and operate a simple circuit-breaker. There is no combination in his patent. There is no suggestion of combining in one system an automatic circuit-closing device with the circuit-closing device to be operated at will and located at a distance. The Knowles patent presents no combination which is even suggestive of claims 3 and 4 of the patent in suit.

The May patent is for an automatic grounding apparatus for a number of electric wires entering a telegraph station, telephone exchange, or such other place as may need protection. It does not show the use of a plurality of systems of distribution with a plurality of magnets and local circuits, and with a single source of power. It does not present a combination of automatic circuit-closing devices with remote control device for closing a local circuit at the will of the operator.

The Ahearn patent also shows means for automatically grounding the line on the occurrence of an overload, and is not concerned with circuit-interrupting devices. There is no suggestion in this patent of any combination of means for automatically closing a local circuit with the equivalent circuit-closing device located at a distant point to be operated at will to close the local circuit. The patent presents only one local circuit and magnet with no suggestion of the organization of a plurality of such circuits, and makes no combination with a single source of current, together with switches to be operated at will to close local circuits. The patent is not a combination patent, and cannot be held to present any anticipation of the patent in suit. There is nothing requiring discussion in any other patent cited in the prior art.

Claim 1 of the patent in suit makes no mention of the element of remote control switches, and does not refer to a plurality of systems. It is called by the learned counsel for the complainant a "subcombination" claim. It does not state a combination which presents the real controversy in this case. The principal question before the court is whether claims 3 and 4 set out a combination of elements producing a new and useful result. Should these claims be sustained as presenting a combination entitled to the protection of a patent? It is clear that we find the separate elements of this combination in various old patents. In view of the prior art, are these elements now combined in claims 3 and 4 so as to produce such new and useful result as entitles the inventor to the benefit of protection?

Upon a careful examination of the testimony of Dr. Duncan, it will be seen that he finds in certain patents of the prior art all the elements

which are brought together in the Wurts patent; but his testimony does not lead me to the conclusion that it would have occurred to the mere mechanic skilled in the electrical art to put all these different elements together, and make a practical combination. I do not find anything in his interesting and learned statement which defeats the idea of a combination patent, although his own conclusion is that the result shows a mere addition, and not a combination. In speaking of the inventive idea found in the Wurts combination, Prof. Clifford says:

"It is true, as Dr. Duncan suggests, that the patents of May and Ahearn disclose devices for automatically grounding certain lines. He might well have added that the patent of Knowles discloses a device for automatically breaking a circuit. All three of these patents make use of a local circuit which is normally open. No one of them, however, sets forth the extremely valuable combination of automatic opening of a circuit-breaker and the opening at will from a remote point by means of a local circuit supplied by a single independent source of energy which acts upon the same tripping magnet, either for the automatic opening of the breaker, or opening it by hand from a remote point.

"It is this combination of automatic and remote tripping in which I find the broadly novel idea of Wurts."

And, further, in speaking of the combination of the automatic circuit-closer and the remote-control switch, he testifies:

"The two are used in a true combination such that there suffices for the securing of both the desired results a single course of energy, a single tripping coil, and substantially a single local circuit."

The question of the novelty and usefulness of this combination presents an interesting study, and one which I have found to be not altogether free from difficulty. While it is the duty of courts to promote the progress of the useful arts, it is also a duty to be careful that monopoly is not unduly extended. Every alleged combination, brought before the courts, presents a new field of inquiry. This case presents nothing unusual so far as the application of the rules of law is concerned. Upon a careful examination of the whole case, I think the devices brought together under this patent present a combination whereby a new and useful result is produced, and where a more efficient method of practical operation is shown. It is true that the two devices do not act simultaneously, but they co-operate with respect to the work to be done, and in furtherance of it. Each switch and each corresponding automatic circuit-closer are organized in parallel branches of the same local circuit; so that either one may control the same magnet by closing that local circuit through the same source of energy. It cannot, I think, be properly said that Wurts has merely added a remote control system to an automatic system. He has combined the two elements, so that the local circuits are fed by a single source of energy, and operate upon a single controlling magnet. After the system has been effected and placed in operation in an exchange, everything about it seems easy and obvious; but it does not need to be stated that the apparent simplicity of a device, especially of a combination, cannot be held to determine the question of invention. So far as has been pointed out, the mere mechanic, however skilled, in the electric art, never did combine the several elements found in use, and make the practical system which is now brought before the court.

In my opinion there was invention in the combination described by claims 3 and 4. This combination is shown to be of substantial utility, and to have attained a result which, so far as anything has been pointed out to me, has never before been reached in the art. I find that claims 3 and 4 are valid claims, and are entitled to the protection of a patent.

2. Has defendant infringed claims 3 and 4 of the patent in suit? The case shows that the defendant has manufactured, sold, and installed certain electrical apparatus which has been exhibited to the court. This apparatus shows only a single multiphase system with a single remote control switch. It is stipulated, however, that the defendant has sold and installed a plurality of circuit-breakers, with a plurality of remote control switches located at a distant point, each governing its own local circuit through the direct current generator, which is the source of current for the local circuits. Defendant's system is a three-wire system. Wurts also illustrates a three-wire system connected up with a two-phase generator. In claim 1 he has described the circuit-closers as "one for each phase of the system"; but he does not make such description in claim 3 or 4. In my opinion the argument of the defendant is unfounded whereby he seeks to show in reference to claims 3 and 4 that each one of these claims presumes the use of one circuit-closer "for each phase of the system." In the Wurts system, as complainant suggests, there is never at any one moment more than two complete circuits. The defendant, like Wurts, required circuit-closers only in two of the three wires; since an overload occurring on any wire would necessarily affect one or the other of these circuit-closers. Consequently the excessive current in any phase will act to close the local circuit. The defendant operates under the Elden patent, No. 756,344, issued in April, 1904, some years after the patent in suit. Upon examination of the file wrapper of the Elden patent, it will be seen that the Patent Office refused to allow Elden's claims on the alleged novelty of locating an electro magnet in each circuit combination instead of each circuit. It appears that Elden had endeavored to obtain claims for this arrangement of circuit-closers; but such claims were rejected by the Patent Office in view of the prior art; and Elden was obliged to take a patent with specific claims for his particular construction, his claim being limited to a "plurality of independently operative armatures." I cannot sustain the defendant's contention that the Patent Office allowed Elden the broad claim of a coil in each circuit combination, instead of a coil in each circuit. Without discussing the details of this technical matter, I am satisfied that Elden's patent cannot be held to have made any new addition to the art with respect to placing a circuit-closer in each circuit combination, instead of in each circuit. In this regard, it does not appear from the testimony that he did anything more than Wurts had done in his patent, or than Wurts did in actual practice. In the three-wire two-phase system used by Wurts there was no necessity of having a circuit-closer in the third wire, because anything that happened on that wire would always affect a circuit-closer in one of the other two wires. It seems to me that the complainant is correct in saying that precisely the same thing is true of the three-wire three-phase system, for reasons

which were thoroughly understood in the art prior to the Wurts patent. In claims 3 and 4, in dealing with circuit-closing devices, there is no limitation "one for each phase of the system." There is no limitation, express or implied, that there must be a separate circuit-closer for each phase. All that is required is that the excessive current in any phase actuates means to close the local circuit. The case shows that the defendant employs the Wurts combination of the plurality of systems of electrical distribution, each consisting substantially of a circuit-breaker, controlling-magnet, and a normally open local circuit; also automatic means for closing the local circuit upon excessive current, and a remote control-switch which may be operated at will to close the same local circuit. I am satisfied that the defendant must be held to have infringed claims 3 and 4 of the Wurts patent.

After a full examination and study of the record, and of the very able arguments of counsel, I conclude that the patent.in suit discloses invention; that claims 3 and 4 are valid claims, and must be sustained as producing a valid combination under the patent law; and that claims 3 and 4 have been infringed by the defendant. A decree may be entered for the complainant, upon claims 3 and 4, for an injunction and for an accounting. The bill may be dismissed as to claim 1. The complainant may recover its costs.