## LEKTOPHONE CORPORATION v. SYLO LIGHTING FIXTURE CO.

(District Court, E. D. New York. March 1, 1926.)

**1. Patents ⚖️129.**

Estoppel of patentee by file history of patent can be considered only on issue of infringement, not of validity.

**2. Patents ⚖️328.**

Hopkins patent, No. 1,271,527, claims 29 and 30, for sound-regenerating machine, *held* valid and infringed.

**3. Patents ⚖️167(1).**

Claim cannot be broadened by specification, but latter should be looked to in determining meaning of descriptive word in claim.

**4. Patents ⚖️328—Statement in specification of Hopkins patent, No. 1,271,527, for sound-regenerating machine, that object was to prevent wear on record, does not render it inapplicable to radio loud speaker.**

Statement in specification of Hopkins patent, No. 1,271,527, for sound-regenerating machine, that object was to prevent wear on record, does not render patent inapplicable to radio loud speaker, in view of possibility of upsetting mechanism with consequent distortion and other ill effects.

**5. Patents ⚖️328.**

Hopkins patent, No. 1,271,529, claims 1, 2, 3, 4, 8, for acoustic device, *held* valid and infringed.

In Equity. Suit by the Lektophone Corporation against the Sylo Lighting Fixture Company to restrain infringement of patent. Decree for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, of New York City, of counsel), for plaintiff.

Duell, Anderson & Duell, of New York City (W. H. Crichton Clarke, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity in which plaintiff seeks to restrain the alleged infringement by the defendant of patent No. 1,271,527, issued to Marcus C. Hopkins, for sound-regenerating machine, dated July 2, 1918, and patent No. 1,271,529, issued to Marcus C. Hopkins, for acoustic device, dated July 2, 1918, both of which were by mesne assignments assigned to the plaintiff, and for damages.

Defendant interposed the twofold answer of invalidity and noninfringement.

This suit is based on claims 29 and 30 of patent No. 1,271,527, and claims 1, 2, 3, 4, and 8 of patent No. 1,271,529. The principal defense seems to be that of noninfringement.

The defendant offered in evidence the following patents of the prior art:

British patent No. 3393, A. D. 1901, to Stroh, for improvement in the diaphragms of phonographs, musical instruments, and analogous sound producing, recording, or transmitting contrivances.

United States patent No. 216,051, to Maxwell, for improvement in mechanical telephones, dated June 3, 1879.

United States patent No. 252,024, to Farrington, for mechanical telephone, dated January 10, 1882.

United States patent No. 254,642, to Hale, for telephonic receiving instrument, dated March 7, 1882.

United States patent No. 599,867, to Rogers, for telephone transmitter, dated March 1, 1898.

United States patent No. 654,360, to Schopf, for sounding-board support, dated July 24, 1900.

United States patent No. 822,024, to Shanks, for phonograph, gramophone, and other similar sound-reproducing machines, dated May 29, 1906.

United States patent No. 857,209, to Smith, for sound-producing device, dated June 18, 1907.

United States patent, No. 986,477, to Lumiere, for acoustical instrument, dated March 14, 1911.

The Shanks patent, No. 822,024, and the Lumiere patent, No. 986,477, were cited as references by the Patent Office, as appears by the file history of the patent in suit; the other patents were not. I do not find, however, that the other patents so offered add anything substantial to the patents considered by the Patent Office examiner. The presumption of validity is increased rather than weakened by the introduction of said patents in evidence.

The invention of the patents in suit seems to me to be something more than a mere improvement upon the sound-box horn combination of the prior art, because the patentee of the patents in suit has discarded the sound-box horn principle and proceeded successfully along the line of sounding boards. He discovered that a large stiff, light cone of vibratile material, if properly supported, would vibrate to all the essential frequencies of the audible spectrum, and would faithfully reproduce on unconfined air the original sounds when a mechanical vibration representing those original sounds was imparted to the apex of the cone. The patents in suit are not, in my opinion, pioneer patents, but are meritorious patents and entitled to a liberal construction and a range of equivalents sufficient to secure to the inventor the invention which he made. I fail to find anything in the prior art, either as cited by the patent examiner or offered in evidence on this trial, that anticipates the patents in suit.

[1] The defendant, it would appear, attempts to raise the question of estoppel alleged to be shown in the file history of patent No. 1,271,527, as affecting the validity of the patents in suit, but that cannot be done, as an estoppel of that character can be considered only on the question of infringement and not on the question of validity. Westinghouse Electric Mfg. Co. v. Condit E. Mfg. Co. (C. C.) 194 F. 430; A. G. Spalding & Bros. v. John Wanamaker, 256 F. 533, 167 C. C. A. 602; Baltzley v. Spengler Loomis Mfg. Co. (C. C. A.) 262 F. 426; General Electric Co. v. Nitro Tungsten Lamp Co. (C. C. A.) 266 F. 1000; Harvey Hubbell, Inc., v. General Electric Co. (C. C. A.) 267 F. 570; Campbell v. Pomeroy (D. C.) 300 F. 874.

We are thus brought to the question of infringement, and for convenience I shall consider that question with reference to the patents in the numerical order.

### Patent No. 1,271,527.

[2] Claims 29 and 30 of said patent, on which this suit is based, read as follows·

"29. In a sound-regenerating machine, a vibratile conical tympanum of large area rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum and arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element.

"30. In a sound-regenerating machine, a vibratile conical tympanum rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element; the tympanum having an area sufficiently large to effect, without amplification, sound waves of large volume and carrying power."

The elements of claim 29 are: (1) A vibratile conical tympanum of large area rigidly supported at its periphery and freely exposed to unconfined air; (2) a sound-vibrated element; and (3) vibration transmission means connecting said element and said tympanum and arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element.

The elements of claim 30 are the same as claim 29, with the exception that the tympanum is defined as having an area sufficiently large to effect, without amplification, sound waves of large volume and carrying power.

The defendant denies that it uses any of the elements of the combination, and bases its defense of noninfringement on what it contends are limitations clearly expressed in the claims of the patent in suit, and imposed thereon by the prior art and the file history of the application, and also on the contention that any expansion of the claims beyond the definite limitations and meaning impressed thereon by the file wrapper agreement would cause them to be anticipated by the Maxwell patent, as well as other patents in evidence.

Whether the first element of the combination is found in the defendant's structure depends upon the meaning of the word "tympanum" as used therein. Defendant contends that the word "tympanum" as so used means the cone itself, and that the two claims define an arrangement in which the clamping rings $K$, $K'$, are applied directly to the peripheral edge of the cone itself without any interposed yielding supporting rim, corresponding to the plane peripheral portion 1.

In support of this contention the defendant cites the following portion of the argument of the patentee's attorney when the amendment of March 28, 1916, was filed, as found in the file history: "It is essential to the success of applicant's machine that the tympanum be of large area and that the base of the vibratile portion thereof exceed nine inches in diameter, and furthermore that the peripheral edge of the tympanum, exterior of the vibratile portion, be rigidly secured or tightly gripped between the rings of the supporting frame. These definitions of the essential characteristics of the invention have been included in the claims by the amendments aforesaid, and said claims are, therefore, believed to be allowable."

I am unable to agree with the defendant, because it seems clear to me that the word "tympanum," as used in the said claims, includes both the conical portion 1' and the supporting rim 1, and that is exactly what was argued by the patentee's attorney at the time of the amendment of March 28, 1916, when he said "that the peripheral edge of the tympanum, exterior of the vibratile portion, be rigidly secured," thus showing that the tympanum was composed of two parts: (1) The peripheral edge of the tympanum, exterior of the vibratile portion; and (2) the vibratile portion.

This is further shown in the specification of the patent in suit (page 3, line 124, to page 4, line 2) as follows: "The plane peripheral portion 1 of the tympanum maintains the place of the conical active portion of the tympanum and yields sufficiently to permit of the required motion of the conical portion, resisting, however, displacement of the conical portion in just that degree necessary to maintain the form and neutral position of the active conical portion." Clearly this does not mean a rigid support for the edge of the vibratile cone.

While in the patented device the tympanum must be rigidly supported at its periphery, it clearly appears from the specification that the patentee used the word "tympanum" in the patent in suit, not to describe only the vibratile cone, but as comprising the conical active portion and the yielding rim portion, and when it is rigidly supported at the edge of the yielding rim portion 1, away from the cone 1', then the yielding rim 1 performs, in conjunction with its rigid support, its intended function of permitting the sufficient but limited movement of the active conical portion. This clearly appears in the patent in suit (page 2, line 128, at page 3, line 5) as follows: "A tympanum L of light vibratile material has an annular plane peripheral portion 1, the outer edge of which peripheral portion or supporting rim 1 is tightly gripped and rigidly supported between the ponderous rings $K$, $K'$, and a central conical portion 1' rising from the inner edge of the annular plane peripheral portion."

[3] Of course, a claim of a patent cannot be broadened by the specification, but in order to determine what the patentee meant by the word "tympanum" in the claims 29 and 30 recourse should be had to the specification, because the patentee presumably knew the description he intended and may not have known how the word was defined in the dictionary.

Mr. Himmer, defendant's witness, would not say that the defendant's structure (Exhibit F) was a duplication of the device of the Maxwell patent, No. 216,051, but said that it illustrated the principle of the Maxwell patent.

The Maxwell patent, No. 216,051, is for an improvement in mechanical telephones, and Fig. 1 shows, but the patent does not describe, with reference to that figure, a mechanical telephone that had sounding boards. The patentee said that his invention claimed in said patent "relates to the construction of a vibratory apparatus of quite different form and of a much better result from the one hereinbefore described." It is the improvement which it is claimed defendant is making. The improvement which was the invention of the patent consisted of a couple of membranes of sheepskin, which the patentee said had to be "stretched and held taut by means of the button e on the wire T; and but for the button i on the wire outside of the box the vibrators would collapse when the wire was relaxed," and he put them in a box which had sound deadening material in it. Evidently he had discovered that there was not enough energy to make the sounding board resound, and therefore wanted to substitute for that a device with a resonant chamber.

Maxwell also says: "There is in it no more of wood, which is itself capable of a high degree of vibration, than enough for a frame to hold the vibrators in position and proper shape, and that it is therefore very efficient for the purpose of condensing and strengthening air vibrations for transmission."

Clearly the defendant is not using in its structure the prior art because it chose for its comparison, as nearest in the prior art, the device of the Maxwell patent, and to my mind it is impossible to say that defendant is using that device even in principle.

I am unable to see that the claims in suit are limited beyond the plain meaning of their language, as I have hereinbefore construed the same, by the rejection and cancellation of claim 19, because the combination of claim 29 was not the subject-matter of claim 19. The subject-matter of claim 19 was never abandoned but was insisted upon and finally allowed. In this patent in suit claims covering the tympanum and its supporting structure limited to a mechanical sound reproducer are found, and in the divisional application which was filed (patent No. 1,271,529) are found the broad claims for the tympanum and its supporting structure as an acoustic device; claim 12 being the same in substance as said original claim 19, except that it is limited to "a machine for directly regenerating sound from a record of the same."

The effect of the amendment of March 4, 1916, was to limit the claims to a device in which there is a rigid support for the peripheral edge of the tympanum. "The peripheral edge of the tympanum," as used in said claims, means, as we have hereinbefore shown, not the edge of the vibratory cone, but the peripheral edge of the interposed yielding rim 1. The claims cannot be asserted by the plaintiff to cover a device in which there is not such rigid support for the tympanum.

In the device of the patent in suit the supporting rim is turned out. In the defendant's structure (Exhibit 3) it is turned in, and the rigid support is found in both instances at the periphery of the supporting rim. The words of the claim "and freely exposed to unconfined air" are used to emphasize the fact that the device of the patent in suit has no horn or amplifying chamber. The patentee is not estopped by the file history to say that the defendant's device embodies a tympanum freely exposed to unconfined air, nor are the claims limited by the prior art as shown in patents No. 562,753 to Amet, No. 822,024 to Shanks and No. 986,477 to Lumiere, because while these patents all showed attempts to produce self-sustaining sound waves on unconfined air, without the interposition of a sound box or amplifying horn, none of them suggested the idea of accomplishing that purpose by means of a cone of the character described, and actuated in the manner described and claimed in the patent in suit. In the defendant's structure there is neither a sound box nor horn.

The second element, "a sound-vibrated element," is found in the defendant's structure in the vibrating armature of an electrically driven device.

The third element, "vibration transmission means connecting said element and said tympanum and arranged to impart to the tympanum vibrations which are relatively

much shorter than the vibrations imparted to the said element": This element is found in the defendant's structure, because in that device one point, the fulcrum of the lever, is fixed, the point of application of force is the magnet and the actuating rod; what defendant calls the electrically vibrated tongue is between the point of application of the force and the fulcrum.

[4] It does not seem to me that the statement in the specification of the patent in suit, that the object was to prevent wear on the record, can be construed as rendering the patent in suit inapplicable to a radio loud speaker, because in place of wear on the record you have the possibility of upsetting the mechanism with the consequent distortion and other ill effects.

The additional definition of claim 30, "the tympanum having an area sufficiently large to effect, without amplification, sound waves of large volume and carrying power," is simply a further statement that the tympanum claimed has no horn resonator sound box or amplifier connected therewith but is exposed to unconfined air.

All the essential elements of the combination of the claims sued on, of the patent in suit, either in the form shown in the said patent in suit or their mechanical equivalents performing the same function in the same manner and for the accomplishment of the same result, are found in the defendant's device.

Patent No. 1,271,527 is valid and infringed.

### Patent No. 1,271,529.

[5] Claims 1, 2, 3, 4, and 8, on which this suit is based, read as follows:

"1. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area.

"2. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area, said conical portion being rigid in the direction of the axis of the tympanum.

"3. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area, the altitude of said conical portion being substantially one-quarter of the diameter of its base.

"4. An acoustic device, comprising a tympanum support having a circular aperture, and a light tympanum freely exposed to unconfined air and having its outer edge rigidly mounted on said support in said aperture; said tympanum having a central conical portion, the base of which exceeds in area one-half the effective area of the said tympanum; the tympanum being of sufficient area to impart to the surrounding free air, when vibrated, sound waves substantially corresponding in intensity to the original sound waves."

"8. An acoustic device, comprising a tympanum embodying a bodily movable, central conical portion, and an annular rim which encircles said conical portion and which is rigidly supported, said conical portion being freely exposed on all sides to unconfined air and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated, substantially as described."

The elements of claim 1 are: (1) A rigid support for the periphery of the tympanum; (2) a rim portion which, together with the conical portion, makes up a free area exceeding nine inches in diameter; and (3) a central conical portion which occupies not less than eight-tenths of the diameter of the entire tympanum.

The elements of claims 2 and 3 are the same, with the exception that claim 2 requires that the conical portion shall be rigid in the direction of the axis of the tympanum, and claim 3 requires that the altitude of the conical portion shall be substantially one-quarter of the diameter of its base.

The same combination is differently expressed in claim 4, the rigid support being here defined as a "tympanum support having a circular aperture" in which the tympanum is mounted, and the tympanum as a light tympanum freely exposed to unconfined air, and having its outer edge rigidly mounted on said support in said aperture, said tympanum having a central conical portion the base of which exceeds in area one-half of the effective area of the said tympanum; the tympanum being of sufficient area to impart to the surrounding free air when vibrated, sound waves substantially corresponding in intensity to the original sound waves.

The same combination is again differently expressed in claim 8 as comprising a tympanum embodying (1) a bodily movable, central conical portion, and (2) an annular rim

which encircles said conical portion, and which is (3) rigidly supported, said conical portion being freely exposed on all sides to unconfined air, and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated, substantially as described.

The tympanum is described in the specification at page 2, lines 72–79, as follows: "The tympanum L, which forms the subject of the present case, is constructed of light, vibratile material and has an annular plane peripheral portion or supporting rim 1, the outer edge of which is tightly gripped and rigidly supported between the rings K, K', and a central conical portion 1' rising from the inner edge of the said rim 1."

The specifications further point out that if a satisfactory regeneration of sound is to be had, the diameter of the whole tympanum should exceed nine inches and the base of the central conical portion should exceed in area one-half of the effective area of the entire tympanum. The diameter of the base of the conical portion should be at least eight-tenths of the diameter of the tympanum. If the tympanum be nine inches in diameter of the base, the conical portion will be 7.2 inches.

As has been shown in the discussion under the prior patent, No. 1,271,527, p. 3, line 124, to page 4, line 2, the conical portion 1' of the tympanum is the active resounding portion, and the rings K, K' constitute a rigid mechanical support for the outer edge of the supporting rim 1 and "the plane peripheral portion 1 of the tympanum maintains the place of the conical active portion of the tympanum and yields sufficiently to permit the required motion of the conical portion resisting however displacement of the conical portion in just that degree necessary to maintain the form and neutral position of the active conical portion.

Defendant contends that its device does not infringe any claim of the patent in suit, in that it does not employ a tympanum rigidly supported at its periphery, but that its tympanum has a floating or vibratory periphery, and again contends that its device is constructed on the principle of the Maxwell patent. These questions have been considered in the discussion of the infringement of the prior patent in suit.

Clearly the word "tympanum" as used in the claims includes the conical portion L and the supporting rim 1, and in the defendant's device the inturned supporting rim, interposed between the active conical portion and the defendant's rigid supporting ring,

flexibly supports the active conical portion and is the corresponding element to the flat supporting rim of the patent in suit, of which it is a mechanical equivalent.

Defendant further contends that its cone support for the tympanum forms a wall of a resonance chamber. With this contention I cannot agree because Mr. Himmer, called on behalf of the defendant, admitted that the resonance of the chamber was substantially the same as the resonance of the cone itself practically below the audible spectrum; therefore the device will not resound to any note within that spectrum and thereby disturb the correct reproduction of the words and music.

The entire device is made nonresonant for all frequencies of the audible spectrum. The defendant's device is larger than the device of the patent in suit, but the proportion seems to have been preserved. The three elements are thus found in the defendant's device.

Patent No. 1,271,529 is valid and infringed.

A decree may be entered in favor of the plaintiff against the defendant, with costs and the usual order of reference.

Settle decree on notice.