## LEKTOPHONE CORPORATION v. WESTERN ELECTRIC CO., Inc.

District Court, S. D. New York.   July 12, 1927.

Patents ⬅➡328—Hopkins, 1,271,529, claims 1, 2, 3, 4, 8, for acoustic device, held valid, not anticipated, to involve invention, but not infringed.

Hopkins patent, No. 1,271,529; claims 1, 2, 3, 4, and 8, for an acoustic device, *held* valid, not anticipated, to involve invention, but not infringed.

2. Patents ⬅➡328—Hopkins, 1,271,527, claims 29, 30, for sound-regenerating machine, held anticipated and invalid.

Hopkins patent, No. 1,271,527, claims 29 and 30, for a sound-regenerating machine, *held* anticipated and invalid.

In Equity. Suit by the Lektophone Corporation against the Western Electric Company, Inc. Complaint dismissed.

Suit by assignee to restrain alleged infringements of patents No. 1,271,527 and 1,-271,529, for sound-regenerating and acoustic devices, both issued to Marcus C. Hopkins on July 2, 1918, and for damages. Defenses: Invalidity and noninfringement.

The claims in suit are 1, 2, 3, 4, and 8 of patent No. 1,271,529, for an acoustic device, and 29 and 30 of patent No. 1,271,527, for a sound-regenerating machine. These claims read as follows:

### Patent No. 1,271,529.

"1. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion the diameter of which is not less than eight-tenths of the diameter of said free area.

"2. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion the diameter of which is not less than eight-tenths of the diameter of said free area, said conical portion being rigid in the direction of the axis of the tympanum.

"3. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion the diameter of which is not less than eight-tenths of the diameter of said free area, the altitude of said conical portion being substantially one-quarter of the diameter of its base.

"4. An acoustic device, comprising a tympanum support having a circular aperture, and a light tympanum freely exposed to unconfined air and having its outer edge rigidly mounted on said support in said aperture; said tympanum having a central conical portion, the base of which exceeds in area one-half the effective area of the said tympanum; the tympanum being of sufficient area to impart to the surrounding free air, when vibrated, sound waves substantially corresponding in intensity to the original sound waves.

*   *   *   *   *   *   *

"8. An acoustic device, comprising a tympanum embodying a bodily movable, central conical portion, and an annular rim which encircles said conical portion and which is rigidly supported; said conical portion being freely exposed on all sides to unconfined air and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated, substantially as described."

### Patent No. 1,271,527.

"29. In a sound-regenerating machine, a vibratile conical tympanum of large area rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum and arranged to impart to the tympanum vibrations which are relatively much shorter

than the vibrations imparted to the said element.

"30. In a sound-regenerating machine, a vibratile conical tympanum rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum, arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element; the tympanum having an area sufficiently large to effect, without amplification, sound waves of large volume and carrying power."

These are the same claims as were in suit in Lektophone Corporation v. Sylo Lighting Fixture Co. (D. C.) 11 F.(2d) 421, where Campbell, District Judge, held the patents valid and infringed by a device similar to the alleged infringing device here in question.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, Vernon T. Houghton and R. Morton Adams, all of New York City, of counsel), for plaintiff.

Gifford & Scull, of New York City (Charles Neave and George F. Scull, both of New York City, of counsel), for defendant.

THACHER, District Judge (after stating the facts as above). As Judge Campbell pointed out in the Sylo Case, supra, the Hopkins loud speaker is something more than a mere improvement upon the sound-box horn combination, because Hopkins discarded the sound box and horn and successfully developed a sounding board directly radiating sound waves in unconfined air. The prior art devices are of two types, roughly classified as sounding boards and sound-box and horn combinations.

The earliest sounding board comparable to what is now known as a loud speaker is found in the so-called "bellowing telephone" of Sir Oliver Lodge. His British patent, 9,712 of 1898, discloses a thin wooden panel of large size electrically actuated as a sounding board, so as to radiate the sounds transmitted over a telephone directly into a room, or hall. The defendant's demonstration of this device showed an excellent quality of tone reproduction, but lack of volume.

The Starling and Cole publication of 1907 disclosed a vibrating cone employed as a sounding board without sound box or horn. This extraordinarily simple home-made device, constructed of a cardboard mailing tube and a paper cone, was shown to have a purity of tone surprisingly good in the low frequencies, which are difficult to reproduce in a

sound-box and horn combination. Volume was lacking, and when, to increase its volume, this device was driven with increased power, unwelcome buzzing and rattling sounds were heard, apparently caused by the shaking of the unsupported edges of the extremely light paper cone.

Lumiere's diaphragm of plaited paper (United States patent No. 986,477) is most strongly urged as anticipation, as it was before Judge Campbell. Claim is here made that the plaited construction of Lumiere embodies the conical construction of Hopkins with improvements, but I am unable to find in this device equivalents to Hopkins, either in structure or in function. Starling and Cole disclose the vibrating cone used as a sounding board in free air, but in this device the cone is supported at its apex, and its edges are entirely unsupported.

[1] In various prior art devices of the sound-box horn type, and in telephone receivers, small rigid conical diaphragms, usually of metal construction, with flexible rims to permit vibrations of the cone as a whole and without flexing, are found, as illustrated in Stroh, British patent 3,393; Gaumont, French patent 331,226; Edison, United States patent 963,362; Brown, British patent 29,833; and English, United States patent 1,064,062. Of these patents, only two were considered by Judge Campbell—the British patent to Stroh, which is mentioned in his opinion, and the United States patent to English, which is referred to by the examiner. Each is typical of the others, all of which differ from Hopkins, in that they have to do with telephone receivers or sound boxes.

Brown confined his claims to telephone receivers, but in his specifications said: "Where it is desired to make the sounds travel out into a room, a receiver of large size is preferable." This is purely casual and obscure, but it is as close as any one came to Hopkins. What Hopkins really did was to take the small conical diaphragms used in sound boxes, throw away the horn and sound box, and by experiment determine the dimensions required in such a diaphragm for radiating sound waves in free air. This seems a simple thing to have done, in view of the prior development of similar diaphragms in sound-box construction. But the prior art discloses that he was not only the first to construct a sounding board upon these principles, but that his construction was a valuable improvement.

It is insisted that what Hopkins did was not invention; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438, and

similar cases, being cited. In brief, the argument is that Hopkins took the large diaphragm of Lumiere, and substituted for its plaited construction the conical construction of Stroh, to give it an equivalent stiffness, and the annular rim hinge of Stroh, to give it bodily motion. If it is meant that Hopkins is merely a substitution of equivalents for Lumiere, and therefore lacking in invention under the rule in Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566, the argument fails, because Hopkins' rigid cone and flexible annular rim, although found in Stroh, has no equivalent in Lumiere. On the other hand, if Hopkins is not a mere substitution of equivalents for Lumiere, he must be conceded a combination of elements novel in a sounding board, although old in a sound box. There is not to be found in the prior art a sounding board such as Hopkins designed and had patented as his invention, and it is not enough to defeat his patent to say that the elements of his claims are already found in the prior art in isolation or in other combinations. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945; Barbour v. Otis, 240 F. 723, 726.

His was a combination and arrangement of old elements capable of better results than the old devices. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. Of course, the application of these rules must not be carried too far, and, if the change from sound-box to sounding board construction were so obvious as to occur to an ordinary skilled mechanic familiar with the prior art, undoubtedly the rule in Atlantic Works v. Brady, supra, would govern, as is clearly stated in Loom Co. v. Higgins, supra. But I am satisfied that the tympanum of novel construction, which is covered by the claims of patent No. 1,271,529 which are in suit, involves invention, and was not merely the exercise of mechanical skill.

[2] A different conclusion, I believe, must be reached with respect to claims 29 and 30 of patent No. 1,271,527, which cover any vibration transmission means by which the vibrations imparted to the tympanum are relatively much shorter than the vibrations of the sound-vibrated element. The prior art discloses the employment of reducing levers for precisely this purpose in sound-box construction. Brown, British patent 29,833. The drawings of the Lumiere patent, 986,-477, disclose a mechanism which embodies this principle, and a reducing mechanism is physically embodied in the Lumiere device brought to this country in 1909. It is hardly to be supposed that Lumiere embodied a reducing mechanism in his device by accident and without purpose; it is rather to be inferred, from his knowledge of the art, that he regarded the use of such a mechanism as merely a detail of construction well known in the art.

The references to Brown and Lumiere clearly anticipate the claims of patent No. 1,271,527 which are in suit, because it cannot be said to be an exercise of the inventive faculty to apply to a sounding board purely mechanical means for transmitting sound vibrations well known in devices for transmitting similar vibrations to the diaphragm of a sound box or telephone receiver. The reference to Lumiere goes further, and discloses the use of such a mechanism for the reduction of vibrations transmitted directly to a sounding board device, and this as early as 1909. If the Brown patent and the Lumiere device had been called to Judge Campbell's attention, I am confident that he would have reached this conclusion in the Sylo Case.

The question whether the defendant's device infringes the claims of patent No. 1,271,-529 which are in suit remains for determination. A patent broader than its claims is a legal absurdity, and in this case involving a mechanical combination the limitations incorporated in the stated claims cannot be ignored or construed contrary to the plain import of their terms. White v. Dunbar, 119 U. S. 47, 51, 7 S. Ct. 72, 30 L. Ed. 303; Keystone Bridge Co. v. Phoenix, 95 U. S. 274, 278, 24 L. Ed. 344; Sargent v. Hall, 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67.

Claims 1, 2, and 3 of patent No. 1,271,529 were expressly limited to a "tympanum rigidly supported at its periphery, having a free area exceeding nine inches in diameter and a conical portion the diameter of which is not less than eight-tenths of the diameter of said free area." In his specifications Hopkins said: "The invention consists briefly in the provision of a tympanum of novel construction," and in describing this construction he said:

"The tympanum L, which forms the subject of the present case, is constructed of light, vibratile material and has an annular plane peripheral portion or supporting rim 1, the outer edge of which is tightly gripped and rigidly supported between the rings K, K', and a central conical portion 1, rising from the inner edge of the said rim 1. If satisfactory regeneration of sounds from a record or other sound-vibrated element is to be had, the whole diameter of the tympanum; that is, the diameter of the aperture in the

rings $K$, $K'$, should exceed nine inches in order that the conditions required to regenerate the sound waves in the manner above described shall be fulfilled.

"The base of the central conical portion $1'$ should exceed in area one-half of the effective area of the entire tympanum; that is, the area of the aperture in the rings $K$, $K'$, or, in other words, the diameter of the base of said conical portion, should be at least eight-tenths of the diameter of the said aperture. The altitude of the conical portion $1'$ should be at least one-quarter of the diameter of its base.

"It is, of course, possible to make some variation from the approximate sizes given without materially altering the result; but, if the tympanum is constructed as shown in the drawing, any great variation from these proportions will be found to affect the character of the reproduction."

And he further said: "It is conceivable, too, that, when the tympanum is provided with corrugations as just suggested, some variation from the proportions above given may be made; but such variations will not be great."

The defendant's tympanum is of quite a different construction. It consists of two cones, base to base, with their edges rigidly connected to form the periphery of the tympanum. The rear cone is truncated, so as to form a frustrum with a circular aperture 7 inches in diameter. · The structure is supported by a metal bracket with circular rings to which the edges of the frustrum of the rear cone are rigidly attached. Assuming for the moment that the frustrum of the rear cone is, as the plaintiff contends, the equivalent of the flexible annular rim in the patented construction, it is apparent that the defendant's tympanum is not rigidly supported at its periphery or circumference.

What is meant by "free area," with reference to the patented structure, is quite apparently the area of the entire tympanum within the aperture of the supporting rings. For present purposes it may be assumed that, when applied to the defendant's device, "free area" means the surface area of the two cones, including the entire surface of the front cone and the surface of the frustrum of the rear cone down to the supporting rings at the back. The diameters of the two cones are the same, 17¼ inches. The diameter of the supporting rings at the back is 8 inches. It follows that the sum of the diameters of the two cones, 34½ inches, less the diameter of the supporting rings, 8 inches, equals the diameters of the free surfaces.

This figure, 26½ inches, being in excess of 9 inches, is within this requirement of the claims.

But, upon the assumption that the rear cone is the equivalent of the annular rim in the patented structure, the front cone must be the equivalent of the central conical portion of the patented structure, and upon this assumption, which must be made to find any basis of comparison between the defendant's structure and the patented device, the diameter of the conical portion is substantially less than eight-tenths of the diameter of the free area, and is by actual measurement shown to be approximately 65 per cent., instead of 80 per cent., thereof. It is apparent from these figures that the defendant's device does not fall within the limitations of claims 1, 2, or 3 of patent No. 1,271,529, even upon the assumption of equivalence just made. In claim 3 a further limitation is found; i. e., that the altitude of the conical portion of the patented structure is "substantially one-quarter of the diameter of its base." The altitude of the defendant's front cone is 2²¹⁄₃₂ inches, while the diameter of its base is 17¼ inches. The ratio of these measurements is approximately 1 to 6½, and not 1 to 4, as called for by claim 3.

Solely for the purpose of comparative measurement, the assumption has been made that the frustrum of the rear cone is the equivalent of the flexible annular rim of the patented structure. But I cannot regard this assumption as justified for any other purpose. In the Sylo Case, Judge Campbell held to the contrary, saying: "In the device of the patent in suit the supporting rim is turned out. In the defendant's device it is turned in, and the rigid support is found in both cases at the periphery of the supporting rim." And further:

"Clearly the word 'tympanum,' as used in the claims includes the conical portion $L$ and the supporting rim $1$, and in the defendant's device the inturned supporting rim, interposed between the active conical portion and the defendant's rigid supporting ring, flexibly supports the active conical portion and is the corresponding element to the flat supporting rim of the patent in suit, of which it is a mechanical equivalent. * * * The defendant's device is larger than the device of the patent in suit, but the proportion seems to have been preserved. The three elements are thus found in the defendant's device."

As I read the claims, they were intended to confine the patent to a "tympanum of novel construction," and the limitations,

therefore, were inserted to define and limit the particular form of construction covered by the patent. This was necessary, in view of the prior art, which disclosed various forms of similar devices upon which the patented device could be regarded at best as only an improvement, and only so because of the method devised for supporting the edges of the vibrating cone by means of a flexible annular rim. Even this device, thus supported, was not novel in sound-box construction, and therefore it seems to me that the patentee is not entitled to a range of equivalents which will prevent others from accomplishing what he accomplished by means other than those expressly covered by his claims, limited as they are to a particular form of mechanical structure.

It is with the greatest hesitation that I have reached this conclusion, in view of Judge Campbell's decision, which is entitled to great respect, not only as a precedent, but upon grounds of comity. Mast, Foos & Co. v. Stover, 177 U. S. 485, 488, 20 S. Ct. 708, 44 L. Ed. 856. But I am unable to escape the conviction that to hold that the defendant's device comprises a "tympanum rigidly supported at its periphery," within the meaning of the claims, is to construe the claims contrary to the plain import of their terms. My conviction upon the point is strengthened by the differences in operation between the two devices plainly observable under the light of the stroboscope, which disclosed to the eye in sharp contrast the difference in function between the annular rim in the patented structure and the frustrum of the rear cone in the defendant's device.

If my understanding of the claims and their construction is correct, there is no infringement of claims 4 and 8 of patent No. 1,271,529, because the defendant's structure, although it comprises a tympanum support having a circular aperture, does not comprise a tympanum having its outer edge rigidly mounted on said support in said aperture within the meaning of claim 4. Nor does it comprise an annular rim which encircles the conical portion of the tympanum within the meaning of claim 8. Furthermore, in view of the limitations of the prior art with respect to sound-box and horn construction, particularly the reference to Stroh (British patent 3,393), the defendant's tympanum is not freely exposed to unconfined air within the meaning of claim 4, nor is its conical portion freely exposed on all sides to unconfined air within the meaning of claim 8.

That the defendant's structure is unlike the patented structure, not only in its form of construction, but in its mode of operation, was clearly demonstrated by the tests to which reference has been made. These tests disclosed to the eye that Hopkins was entirely right when he said in his specifications:

"The conical shape is given the tympanum, so that shocks or vibrations impressed upon the apex of the cone in a direction toward its base will move the whole cone bodily, the strains being imparted edgewise of the material, and no wave motions being set up in the thin material of the cone. The curvature of the walls of the cone precludes the setting up of waves in the material; and the intended object, a simultaneous movement of the whole conical portion of the tympanum, is thus attained."

The simultaneous movement of the whole conical portion of the diaphragm, without setting up wave motions in the thin material of the cone, was very plainly shown by the stroboscope, and is confirmed by the wire tests as well. This bodily movement of the comparatively stiff and rigid cone is, of course, made possible by the flexible annular rim, the function of which is to serve as a hinge permitting bodily movement of the cone. Subjected to the same tests under like conditions, the operation of the defendant's device was shown to be radically different from the patented structure. The vibrations which imparted to the cone in the patented structure a bodily movement without setting up wave motions in the material of the cone produced in the defendant's device a flexing and bending or wavelike motion extending over the entire surface of the structure from the apex of the front cone to the supporting rings at the back. There was no bodily movement of the front cone as a whole, which did not, as it obviously could not, move upon the frustrum of the rear cone as a hinge, the joint between the two cones being rigid and inflexible.

The functional differences between the elements of the two devices is thus clearly apparent. In Hopkins there is a stiff and rigid member supported upon a flexible member, which functions as a hinge. In the defendant's device the front cone is relatively flexible, and is supported by the more rigid but still flexible frustrum of the rear cone, which does not, and cannot, function as a hinge, but which itself partakes of the wavelike vibrations imparted to the apex of the front cone; such vibrations in the patented device being prevented by the flexible character of the element supporting the bodily moving cone. It is claimed for the defendant's device that the air chamber formed by

the front cone and the frustrum of the rear cone performs a very important function in sound reproduction, and there is no doubt that this arrangement does influence the natural resonances of the device; a matter of some importance in the reproduction of sounds of low frequencies. But, without considering the highly theoretical testimony adduced upon the point, it is enough to say that, regardless of the effect which the presence of this air chamber may have upon effective operation, the defendant's device clearly does not infringe the claims in suit.

My conclusion is that claims 1, 2, 3, 4, and 8 of patent No. 1,271,529 are valid, but not infringed; that claims 29 and 30 of patent No. 1,271,527 are invalid; and that the complaint must accordingly be dismissed, with costs.