## LEKTOPHONE CORPORATION v. COLONIAL RADIO CORPORATION.

### No. 4450.

District Court, E. D. New York.

July 10, 1930.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, of New York City, of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (George F. Scull and Clyde A. Norton, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which the defendant is charged with having infringed letters patent No. 1,271,529, granted July 2, 1918, to M. C. Hopkins, for an acoustic device.

The patent has been litigated in this circuit as well as in other circuits. In none of these litigations has the patent been held invalid, though in some the defendants have succeeded in the defense of noninfringement. The question of validity was not determined by our Circuit Court of Appeals in the two causes, Lektophone Corporation v. Sylo Lighting Fixture Co., 16 F.(2d) 7, and Lektophone Corporation v. Western Electric Co., 16 F.(2d) 10, which came before it. So, in the present case, the usual defenses of invalidity and noninfringement are again raised.

The invention was conceived at a time when in phonograph or talking machine art there existed the sound box horn combination. To overcome distortions, particularly in the horn or amplifier, the inventor sought directly to regenerate the original sounds without the interposition of a confined body of air (the sound box) and without the employment of a restrictive transformer (the horn).

The device adopted to meet the object sought consisted of a cone having an annular plane peripheral portion or rim supported by a rigid frame. It is described in the patent as:

"The tympanum L which forms the subject of the present case is constructed of light vibratile material and has an annular plane peripheral portion or supporting rim L, the outer edge of which is tightly gripped and rigidly supported between the rings K, K', and a central conical portion L' rising from the inner edge of the said rim L. If satisfactory regeneration of sounds from a record or other sound-vibrated element is to be had, the whole diameter of the tympanum, that is, the diameter of the aperture in the rings K, K' should exceed nine inches in order that the conditions required to regenerate the sound waves in the manner above described shall be fulfilled. The base of the central conical portion L' should exceed in area one-half of the effective area of the entire tympanum, that is, the area of the aperture in the rings K, K'; or in other words, the diameter of the base of said conical portion should be at least eight-tenths

of the diameter of the said aperture. The altitude of the conical portion L' should be at least one-quarter of the diameter of its base."

All of the claims of the patent also emphasize the nature of the device as consisting of:

(1) A tympanum comprising (a) a conical portion, and (b) a peripheral rim.

(2) A rigid support of the rim of the tympanum.

A correct understanding of the term "tympanum" as used in the specification is necessary in order to determine accurately the scope of the claims. Some confusion as to what the inventor intended by the term "tympanum" is caused by two references in the specification which seem to indicate that the tympanum was the cone, as, for example, when the inventor says: "The tympanum is shown of conical form with a smooth surface, and this has been found to be very satisfactory."

However, the irresistible inference from repeated references in the specification and claims, particularly the quoted portion from lines 72 to 96, inclusive, page 2, of the patent, is that by tympanum the inventor meant, the combination of the conical part with the peripheral portion.

This conclusion is of importance because it bears materially on a distinction sought to be raised by the defendant in endeavoring to avoid infringement.

A comparison of the defendant's loud speaker with the combination of the patent in suit reveals the presence of a large stiff paper cone, a leather rim affixed to the edge of the cone, and the periphery of the leather rim rigidly supported.

Now claim 1 of the patent, which may be considered as typical of the first four claims, reads as follows: "An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area."

The only serious question that arises in applying this claim to the defendant's structure is whether the leather rim of the defendant's device is part of such a tympanum as is referred to in the claim.

It seems to me that, despite the refinements of scientific theory and results of acoustical studies that have been interjected into this case for one purpose or another, at the heart of the matter the sole question

to be decided with respect to infringement is whether the defendant has avoided infringement by the use of a leather rim.

The defendant's position in the matter is that in claims 1, 2, 3, 4, and 8, reference is made to a tympanum rigidly supported at its periphery. The defendant contends that the tympanum of the defendant's speaker is the paper cone, and that, since it is not rigidly or otherwise supported at its periphery, infringement is avoided.

Dr. Cutting, the defendant's expert, said: "The obvious fundamental differences are that the tympanum of Hopkins which is fastened rigidly at the edge moves, the central portion moves like a piston, the edge keeping it from moving in any other direction. The Colonial, on the other hand, moves in a bell-like fashion, the edge being entirely unsupported, moving in any direction it chooses."

Dr. Cutting's explanation of the functions performed by the leather rim was that it acted as an air seal and also permitted the edge of the cone to move as freely as possible. He said: "The main part of the skiver (the leather rim) is to form an air seal in between the paper cone and the baffle-board, the baffle-board function being done by the cabinet in which the speaker is housed. Another function of the skiver is to increase the weight of the edge of the cone. This limits the extreme movements of the cone at high amplitude and increases the capacity of the cone before blasting occurs."

The foregoing testimony cannot quite be reconciled with what he stated later on, when, in describing the second function of the skiver, he said that it was "to free the edge of the cone, to allow it to move as freely as possible, and. * * *

"It does restrict it by virtue of its weight, that is perfectly true, and it serves a useful function in that respect. But it still allows it to go in whichever way it wants, whereas the paper allows the cone to go only up and down and not in and out at the edges. The two opposite parts of the edge of the cone cannot approach together if they are pressing to the paper edge. It pulls on the paper and the paper will not give. On the other hand, the leather will give to that motion, and that is the essential difference between these two kinds of motion, one must be an up and down motion, and the other one can be a lateral motion, and is a lateral motion."

As opposed to this double function of the leather skiver, Dr. Cutting says of the Hop-

kins' rim that it does not act as an air seal but as a part of the radiating surface of the tympanum. "The whole thing is like a drum head and the whole thing radiates sound. The junction between the annular portion and the conical portion is the place where most of the radiation comes. It is the largest area of the whole device."

Thus if the distinction that Dr. Cutting has drawn is sound, it would follow that the defendant's leather skiver does not perform the same function as the annular rim of Hopkins. One is driven therefore, back to the Hopkins' specification to determine what function exactly Hopkins intended his rim to perform. In so doing we can understand his claims.

The patent in suit is stated to be a division of the invention shown and described in serial No. 224,048, which eventuated in letters patent No. 1,271,527. In the latter patent, Hopkins has this to say of the annular rim: "The plane peripheral portion L of the tympanum maintains the place of the conical active portion of the tympanum and yields sufficiently to permit of the required motion of the conical portion, resisting, however displacement of the conical portion in just that degree necessary to maintain the form and neutral position of the active conical portion."

Clearly that passage does not support Dr. Cutting's theory of the function performed by the Hopkins' annular rim. On the contrary, it shows that the Hopkins' rim performs exactly the same function as Dr. Cutting finds in the leather rim of the defendant.

Dr. Cutting says that one function of the leather skiver is to limit the extreme movements of the cone and to increase the capacity of the cone before blasting occurs. Certainly it would not perform that function without limiting the place of the cone exactly as Hopkins pointed out in his description of the function of the annular rim. It may also be said in passing that any air seal function which the leather skiver has is equally performed in kind and degree by the annular rim of Hopkins.

But Dr. Cutting argues also that the annular rim of Hopkins is part of the radiating surface of the tympanum and that that function is not performed by the leather rim of the defendant. It is possible and doubtless probable that the Hopkins' rim does radiate movement, but there is nothing in the specification which shows insistence by Hopkins that only such radiating rim would serve his purpose.

There are many passages in the specification which refer to the vibrations of the cone, but none of the rim. Stiffness of the cone and flexibility in the rim are the two essential but separate characteristics sought in the two elements of the tympanum. However one may argue, those are the essential characteristics of defendant's cone and skiver.

Moreover, Dr. Farrand testified that limits of physical condition of the rim lie within too much tightness and too much looseness. If the rim is made too loose, "blasting" will result; on the other hand, if the rim is made too tight, the axial motion of the cone is too greatly restricted, and its efficiency will be impaired.

Dr. Farrand also was of the opinion that the choice of material of the rim for effective operation of the cone required that it be light and capable of being moved easily, while the cone proper, though light in weight, must be stiff and capable of holding the curved shape. He said: "If you were to make the rim of a separate piece of paper you would make the rim of a softer paper and the center portion relatively of a stiffer paper for the best results."

Another way of finding out what the function of the Hopkins' rim was both intended to be and is, is to consider what would happen were no rim to be used at all. Dr. Farrand said that a cone so constructed would not be capable of free axial motion and whatever motion was obtained in the cone structure would be due to the flexibility of the cone itself. Under certain conditions, such cones would not radiate low notes at all.

On the other hand, if the edge of the cone was directly clamped without the rim as an intermediary, the desired bodily movement of the cone would be prevented and the sound-producing motion of necessity reduced. Hopkins' solution of the dilemma thus offered was to introduce between the mechanical framework of the device and the vibrating current the annular rim. By this construction he permitted the desired bodily movement of the cone and yet prevented the deformation of the peripheral edge of the cone.

The defendant employs the same part in the same way and produces the same result. It is idle to insist that Hopkins showed the cone and its rim in one piece. Infringement cannot be avoided by making in two parts what the patentee discloses in one part, unless indeed such mechanical division results

in a totally different kind of operation. Nor indeed can infringement be avoided by a mere substitution of material which does not produce a different function or bring about a different operation. Hence, I conclude that the defendant's device infringes claims 1, 2, 3, 4, and 8.

As to claims 5, 6, and.7, they differ from the other claims in that the tympanum is described as vibratile. If by this expression is meant that the entire tympanum be vibratile, it might be doubted whether the defendant's device infringed; for, though the leather used is certainly flexible, it may not be vibratile. As I have construed the patent, however, I think the inventor was concerned with vibration, not of the rim, but only of the conical portion of the tympanum. Hence I find these claims likewise infringed.

There remains for consideration the matter of the validity of the patent. All of the prior art relied upon by the defendant has been considered in previous adjudications, but not, so far as I can determine, in any one cause. Certainly I could not depart from the conclusions of validity reached in this district, Lektophone Corp. v. Sylo Lighting Fixture. Co., 11 F.(2d) 421, and the Southern district of New York, Lektophone Corp. v. Western Electric Co., 20 F.(2d) 150, to say nothing of the courts of co-ordinate jurisdiction in other districts and of the Circuit Court of Appeals of the Third Circuit, Lektophone Corp. v. Brandes Products Corp., 20 F.(2d) 155, unless it appeared that there was important evidence of the prior art not considered in those cases.

In Lektophone Corporation v. Sylo Lighting Fixture Co., hereinbefore cited, of the patents urged strenuously by the present defense, Judge Campbell considered and rejected, as failing to establish anticipations, United States patent No. 986,477 to Lumiere, British patent No. 3,393 of 1901 to Stroh, and United States patent No. 216,051 to Maxwell. (D. C.) 11 F.(2d) 421.

In Lektophone Corporation v. Western Electric Company, hereinbefore cited, Judge Thacher rejected, as failing to show invalidity, United States patent No. 986,477 to Lumiere. (D. C.) 20 F.(2d) 150. He also considered and rejected the Starling and Cole device described and illustrated in the Talking Machine News of July, 1907, Stroh, British patent No. 3,393 of 1901, Gaumont, French patent No. 331,226, Edison, United States patent No. 963,362, and Brown, British patent No. 29,833.

In Lektophone Corporation v. Brandes Products Corporation, 20 F.(2d) 155, 156, the Circuit Court of Appeals reversed the District Court, stating: "Such being Hopkins' disclosure, we next turn to the basic question on which the court below decided the case, namely, whether Hopkins' disclosure was anticipated by Lumiere in his patents, Nos. 986,477 and 1,036,529."

Of these Lumiere patents, that court said, moreover: "Tested by the standard of means and the product, the art never would have had a practical sounding board, had it stopped with Lumiere."

Even in the opinion in Lektophone Corporation v. Crosley Radio Corporation, 46 F.(2d) 126, decided by the District Court of the Southern District of Ohio, Western Division, Judge Hickenlooper, after a very thorough analysis of the prior art, said: "We therefore hold that by the prior art, by the claims as drawn, by the essence and exact nature of the invention as disclosed, and by the estoppel created in the Patent Office proceedings, the patentee here is limited to a diaphragm having the annular rim, rigidly held, and to a comparatively narrow range of equivalents. The loose rubber ring of Brandes may be such equivalent but the total absence of any annulus cannot be so considered."

Since, however, in neither of the two litigations in this circuit was all of the prior art availed of, it may be desirable briefly to review the subject.

Starling and Cole certainly did not disclose the Hopkins' acoustic device. They taught at most:

(1) The use of a conical paper diaphragm mounted upon a cardboard.

(2) The diaphragm had neither annular rim nor fixed support.

Lumiere discloses a flat diaphragm. I agree with both Judges Campbell and Thacher that these patents fail to disclose the conical construction of Hopkins either in structure or in function.

The patents to Maxwell, Dann & Lapp, Stroh, English, Gaumont, and Edison, may be grouped together.

Stroh and Edison each shows a small cone diaphragm, but in the sound box horn combination; Maxwell in No. 206,051 shows a stretched sheepskin membrane in a mechanical telephone; and Watts & Maxwell, No. 237,712, adds nothing of moment. I can find in neither of these patents any sugges-

tion of the Hopkins' tympanum. The sounding board of Maxwell is certainly not the flexible rim of Hopkins.

The Dann & Lapp device shows a telephone transmitter having a small diaphragm. This diaphragm has a central conical portion at the base of the mouthpiece. The specification says: "The sheet metal diaphragm A is constructed with a central conical portion a which may be formed integral therewith or made separately and attached by solder, brazing, or in any other suitable manner. The diameter of the base of the hollow cone may be varied considerably; but we prefer it shall equal and even slightly exceed that of the contiguous inner end of the mouthpiece B, of which it forms practically a conical extension. By this construction and combination of parts the whole force of the air current or sound waves from the mouth of the person speaking into the instrument is concentrated on the cone—that is to say, on the central portion of the diaphragm—thereby producing the maximum effect in respect to the required vibration of the latter, and the transmission of sound with corresponding loudness, force, and precision."

But this neither in construction, in operation, nor in result, constitutes the three-part element of Hopkins. Hence the statement of the inventors that "our improved diaphragm is applicable to other telephonic instruments besides transmitters" is of no significance. That it is radically different from the Hopkins' device is further indicated by their statement: "It is also expedient to employ dampers or elastic pressure-plates, as shown in the drawings, to limit the vibration of the diaphragm, and thus choke out the metallic clang."

The patent of English is for a sound box for talking machines. It is from this sound box combination that Hopkins departs. The patent was cited by the Patent Office and considered by both Judges Campbell and Thacher to be insufficient.

The patent to Gaumont, French patent, showing a small phone diaphragm in a horn without a sound box, can certainly not be urged as an anticipation.

There remains for consideration the British patents to Brown.

Brown shows small cone diaphragm in a head telephone; the cones being connected to the supporting frames by yielding rims to permit a bodily movement of the conical portion of the diaphragm. Patent No. 29-833 of 1910 is the more important. Referring to Fig. 2 of the drawings, the diaphragm is said to be a light aluminum of conical form, and is attached at its center (or apex) to a reed. The diaphragm is of such size that its periphery is brought close to the casing A or other adjacent stationary part, or, "if an appreciable gap exists between these parts, the periphery of the diaphragm is flexibly attached to the casing or to a removable internal flange thereon by resorting to the known expedient of a ring of tissue paper, silk, or other suitable material F' that will not exert any appreciable mechanical constraint upon the diaphragm."

Of the many references to the prior art discussed by the defendant, I find this Brown construction the nearest approach to the Hopkins' device. However, the instrument is essentially a telephone receiver, though the inventor states that, when it is desired to make the sounds travel out into the room, a receiver of larger size is preferable.

The patent was not before Judge Campbell, Lektophone Corp. v. Sylo Lighting Fixture Co. (D. C.) 11 F.(2d) 421, but was considered by Judge Thacher, Lektophone Corp. v. Western Electric Co. (D. C.) 20 F.(2d) 150, and was found inadequate, as being casual and obscure in its disclosure. It may be noted, for example, nothing is said in the British patent about the free area of the tympanum and of the proportion of the diameter of the cone to the rim. These are important considerations. So, not only as a matter of comity, but because of the well-established law that foreign publications which are relied upon as anticipations must of themselves disclose clearly and completely the patented combination, I am obliged to reach the conclusion that the Brown patent fails as an anticipation.

Plaintiff may have a decree in accordance with the opinion.