## LEKTOPHONE CORPORATION v. WESTERN ELECTRIC CO. (two cases).

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

Nos. 190, 191.

1. **Patents** ⬡⟹328—No. 1,271,529, claims 1–4, 8, for paper cone loud speakers, held not infringed.

Patent No. 1,271,529, claims 1–4, 8, relating to paper cone loud speakers, *held* not infringed.

2. **Patents** ⬡⟹165—Claims are limited to requirements stated therein.

Claims of patent are limited to requirements stated therein.

3. **Patents** ⬡⟹165—Specification of method in claims entitles subsequent improvers to accomplish results by different means.

Patentee's specified way of accomplishing its results, as stated in claims, leaves open opportunity for subsequent improvers to accomplish general results by different means.

**4. Patents ⬤234—There is no infringement, where devices are different in construction and action.**

There can be no infringement, where alleged infringing device is different in construction and action.

**5. Patents ⬤328—No. 1,271,527, claims 29, 30, for paper cone loud speakers, held not infringed.**

Patent No. 1,271,527, claims 29, 30, relating to paper cone loud speakers, *held* not infringed.

Appeals from the District Court of the United States for the Southern District of New York.

Patent infringement suits by the Lektophone Corporation against the Western Electric Company. Decree for defendant, and plaintiff appeals. Affirmed.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and R. Morton Adams, both of New York City, of counsel), for appellant.

Gifford & Scull, of New York City (Charles Neave and Geo. F. Scull, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. This appeal was argued with the case of Lektophone Corporation against Sylo Lighting Fixture Company, 16 F.(2d) 7, decided this day. The same claims are in suit here. We have described at length, and sufficiently considered, the patents and claims in that opinion. It will be unnecessary to restate what the invention is, or to construe the claims further for the purpose of this opinion, because we think the appellee does not, by what it manufactures, infringe the claims of the patents in suit. We do not deem it essential to consider the patents of the prior art which are referred to, or, indeed, to pass upon the question of validity of those patents, in view of the state of the art.

[1] The appellee's device is the same in general form as that in the Sylo Case. It has two cones, with their edges rigidly connected to form the periphery of the device, and with the cone angles of the two cones exactly the same. The diameter of the periphery is 17¼ inches and the conical altitude is 2²¹⁄₃₂ inches. The rear cone has its top removed to form a frustrum, and the support of the second is attached to this rear cone, and has a 7-inch opening into the space between the two cones. The electrically operated unit is positioned in the chamber formed by the two cones, and its vibrations are delivered to the apex of the front cone. The joint between the bases of the two cones is the rigid one, and is incapable of a hinged action, and the frustrum forms a relatively rigid support for the front cone; but, when that frees the edges of the front cone, vibrations from the apex can flow out to the edge of the front cone, permitting the entire surface of the front cone to act as a sounding board.

[2] As we pointed out in the Sylo Case, and as the patent No. 1,271,529 (claims 1, 2, and 3) teaches, the diaphragm must be supported at its periphery. The appellant has two rings at the periphery of the diaphragm, and clamps them between the outstanding hinged rim. In appellee's construction, the rigid support is formed by the rings at the back cone. It is not located at the periphery. Again, as the patent teaches, the diaphragm must have a free air area exceeding 9 inches in diameter. This dimensional limitation does not read upon the appellee's structure. Nor is the appellee's rear cone the mechanical equivalent of the appellant's out-turned rim, either structurally or functionally. We may not interpret the claims which have these limitations to include greater percentages of area or diameter. To do so would be to impart to the claims requirements which are not found there. White v. Dunbar, 119 U. S. 51, 7 S. Ct. 72, 30 L. Ed. 303.

Claim 4 is not restricted to the same dimentional limitations as claims 1, 2, and 3. This claim calls for a tympanum freely exposed to unconfined air and having its outer edge rigidly mounted on a circular aperture. The outer edge of the appellee's device is the junction between the bases of the two cones. The outer edge of the structure could not be a part inside the periphery of the device. Nor does the appellee have its tympanum freely exposed to unconfined air. In this art, confined air appears to mean the activity of the sound box, and the inventor says, in referring to it, that you have a diaphragm with an inclosure in some functioning chamber of the same kind on the other side of the diaphragm. He says that, when he referred to confined air in his patent, he meant that there is an inclosure in which the air that is being operated on is surrounded by walls, and by limiting his invention to "freely exposed to unconfined air" he was distinguishing between sound box construction, in which the air is confined, or partially confined, against the rear side of the diaphragm.

In appellee's device, the air is confined against the rear surface of the front cone, to the apex of which the sound vibrations are transmitted; also there is in appellee's device

an opening through the rear ring support of about 7 inches, and the maximum diameter of the inclosed chamber is considerably less than one to two. Giving the phrase "freely exposed unconfined air" the interpretation the inventor intended it should have, in order to distinguish it from sound box art, it is clear that the appellee's structure does not have this limitation, and therefore may not be said to infringe this claim.

Claim 8 contains the same limitations as to the free exposure to the unconfined air, and also the annular rim which encircles the conical portion. The frustrum used by the appellee and the ring used by the appellant are not alike, nor does the frustrum encircle the appellee's cone as does the appellant's. If "encircle" means to surround, as that word is commonly understood, it does not surround or encircle the front cone. This limitation as to unconfined air distinguishes the patent in suit from the patents of the sound box art. The out-turned rim of the patent in suit is not mechanically the equivalent of the rear cone of the appellee's construction. The inventor arranges for the flexibility in his rim and all the stiffness in his cone, while the appellee distributes the flexibility throughout both the front and rear cones and makes the rear cone the stiffer of the two elements. [3] By reason of the stiffness of this rear cone, in comparison with the stiffness of the front cone, it does not provide the yielding support for the front cone which is the purpose of the outstanding rim of the patent, and no breadth of equivalents should be granted to the appellant which would cover the appellee's use of its rear cone to support the front cone. The appellant's specified way of accomplishing its results, as stated in the claims, left open opportunity for subsequent improvers to freely accomplish the general results by different means. Noonan v. Chester Park Athletic Club Co., 99 F. 90, 92, 39 C. C. A. 426; McCormick v. Talcott, 20 How. 405, 15 L. Ed. 930.

The modes of operation in the production of sound are different in the respective structures. When the apex of the structure of the patent in suit is vibrated, the force is transmitted through the rigid central zone to the yielding rim, which bends back and forth to permit a bodily simultaneous movement of the whole conical portion of the tympanum. This bodily movement or plunger action sets up sound waves in the air. When the apex of the appellee's diaphragm is vibrated, the force is met at the edge of the front cone by resistance from the truncated back portion, which has a greater resistance to bending than the front cone itself. The vibrating force of the apex tends to produce a flexing, which extends throughout the whole material between the apex and support, and it does not produce a bodily movement. The waves set up in the surface of the diaphragm transmit through their motion to the air the sound waves by what is called wave-transmission action.

[4] This difference in operation was exemplified by the tests made by hand pressure, by the wired diaphragms, and the stoboscope tests. The result is that the appellant in its construction produces its effect with a flexible system and without an air chamber, whereas in appellee's device it is produced by the rigid system with an air chamber. This leads to the conclusion that the appellee, by employing the air chamber, enters the sound box art, while the appellant insists that its purpose, as in the structure, was to get away from the sound box art. The appellee has a confined body of air, or semiconfined body of air, on one side of its front cone, while the appellant has unconfined free air. There can be no infringement where the device is different in construction and in action. Edison v. American Mutoscope Co., 151 F. 773, 81 C. C. A. 391.

[5] As to patent No. 1,271,527, we likewise think the appellee did not infringe. In addition to what we have said in the Sylo Case, we may add the following:

This invention was developed to meet the requirements of the phonograph, in which the stylus, such as a steel needle, is moved by the sound grooves of a phonograph disc. The sound grooves are placed close together on these discs, so as to get as much music on a given-sized disc as possible. The walls between the successive grooves are very thin. The discs at the time were made of wax, and their walls had very little resistance against side pressure. The patentee found, when he attempted to connect his large diaphragm with the stylus or needle, so that the diaphragm would move the same distance at the end of the stylus, that too much pressure would be developed against the weak wall of the sound groove, so that the phonograph record would wear out very rapidly. He put in a lever in his system, so that part of the lever moved by the stylus is further from the fulcrum of the lever than is the connection to the diaphragm. The amount of reduction which he obtained, and the corresponding lessening of the wear of the record, is measured by the ratio of the motion of the stylus in the sound groove to the motion of the center of the diaphragm. This transmis-

sion arrangement reduced the wear on the record by reducing the pressure on the stylus point against the wall of the sound groove.

The appellee's device is arranged so as to have an armature lever a, pivoted at its center, moved by magnets, k and l, in accordance with the variations in telephone current (Exhibit 22). The end of the lever, a, is connected by a rod, d, to a lever, f, pivoted at g, and a rod, h, connected to the lever, f, which leads to the diaphragm. The dimensions are such that the movement of the rod, h, is always the same as the movement of the lever, a, opposite the center of the pole piece that has a point where the force of the magnet is exerted. The claims in suit refer to the sound-vibrated element, which is imparted to the tympanum variations, which are relatively much shorter than the vibrations of the sound element.

In the patent in suit this means that the end of the needle, which is in the sound groove, is to move a much greater distance than the center of the diaphragm, and it is wholly immaterial what the connecting mechanism may be which accomplishes this result. A construction in which the end of the needle moves, the same as or a less distance than the center of the diaphragm, does not come within the claim and does not infringe. In the appellee's driving unit, the movement imparted to the diaphragm is not much shorter than the motion of the sound-vibrating element, for it is exactly the same. Claims call for a less motion imparted to the diaphragm than is imparted to the sound-vibrated element, and the reduction of motion is between the elements of the combination.

The appellant's claim is that the appellee, in the use of the old horn type of loud speaker, had a certain relation between its designated diaphragm movement and the movement of its sound-vibrating element, and that when the appellee built the hornless type loud speaker, here claimed to be an infringement, it adopted in this hornless type a relation of diaphragm movement to the movement of the sound-vibrating element, which makes the diaphragm in the hornless type move a less distance for a given movement of its sound-vibrated element than does the diaphragm of the old horn type and the same given movement of its sound-vibrated element.

It also claims that the appellee employs a double magnet, with each pulling on opposite ends of the lever. The amplitude of movement of either end of the armature between its adjacent pole position is one-half the amplitude of movement of the whole armature, and it says that the rod, h, although having the same amplitude of motion as one end of the armature, a, nevertheless has a reduced motion compared with the total motion of the armature, which, it says, is the sum of the motions of the two ends. Whether the magnet pole pieces are single or double, or whether the free end of the armature is present or absent, will not affect the movement relation between the armature and the rod, since the movement relation is determined by fixed connections between them, which are not in any way affected by the presence or absence of the magnet pole pieces or the free end of the lever. It is this movement relation which is the subject-matter of the claimed invention.

And there is no infringement of claims 29 and 30 of patent No. 1,271,527, for the desired small amplitude of movement is not imparted to the cone by the same means, or the equivalents by which the appellant accomplishes its desired result. The appellee imparts to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the armature, and, indeed, in this arrangement, the vibrations imparted to the cone are of the same amplitude as the vibrations imparted to one end of the armature at the pole pieces. These claims are not infringed.

Judgment affirmed.

HAND, Circuit Judge, not voting.