## WISCONSIN ALUMNI RESEARCH FOUNDATION v. GEORGE A. BREON & CO., Inc.

### No. 2411.

District Court, W. D. Missouri, W. D.
Oct. 29, 1935.

George I. Haight and M. K. Hobbs, both of Chicago, Ill., and R. R. Brewster, of Kansas City, Mo., for plaintiff.

Delos G. Haynes and Frederick B. Wolf, both of St. Louis, Mo., and George D. Beardsley, of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit for the infringement of a patent. Said patent is numbered 1,-877,237. Edwin B. Hart, Madison, Wis., was the inventor or discoverer, and all his interest therein has been assigned to the plaintiff. In fact, the patent was granted to him as the assignor of the plaintiff. The application for the patent was filed on June 18, 1928, and the patent was issued September 13, 1932. The bill contains the usual allegation that patentee "was the original, first and sole inventor of a new and useful invention of a compound for the prevention and treatment of anemia."

Plaintiff further alleged that said invention "was new and useful; was not known or used by others in this country before his invention or discovery and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof for more than two years prior to his application."

The bill contained an averment that the invention was "of recognized great practical utility; of great value to the plaintiff, and of great benefit to mankind."

There is the usual assertion of infringement on the part of the defendant "by practicing the invention therein patented in defiance of the rights of the plaintiff."

Plaintiff seeks an injunction and an accounting of profits accruing to the defendant.

Defendant by its answer denies the allegations of the bill save only that a patent was applied for and granted at the time alleged in the bill. However, it challenges the novelty and utility of said discovery or invention and asserts that there was a failure to comply with statutory requirements. It particularly puts in issue plaintiff's averment that said patent had not been described in any printed publication in this or any foreign country before the invention.

Said patented invention relates to a compound for the prevention and treatment of anemia. It contemplates "the use of a therapeutic agent containing as an active ingredient salts of the elements copper and iron, which may be administered either together or in conjunction with other substances * * * by direct feeding to the patient or through the addition of the salts of copper and iron to the diet." Or, as better expressed by claim 1, as follows: "A therapeutic agent for use in connection with the treatment of anemia, including copper sulphate and a salt of iron combined to render effective the utilization of said salts for correcting the anemic condition of the blood."

The issue made by the pleadings and the evidence was the sole one as to whether the invention had been described "in any printed publication in * * * any foreign country before his invention or discovery thereof for more than two years prior to his application."

Upon this issue, the following facts were adduced: The plaintiff rested its case after proof of its patent and the infringement thereof by the defendant. It was obvious upon the testimony that if the patent were valid, it was infringed. Moreover, plaintiff established that its invention or compound had been recognized and several substantial and reliable licensees were acting thereunder.

The defendant proffered testimony to support its contention that the invention had been described in publications of foreign countries many years prior to the application for and the issuance of said patent.

Dr. Hugh A. McGuigan, of Elgin, Ill., and a professor of Pharmacology in the Medical School of the University of Il-

linois, testified that he had written several books and articles on Pharmacology and had written and published a book on Pharmacology and Therapeutics. He said that in treatment of anemias, the elements iron and copper had always been used. Other substances were included in combination either with iron or copper. There was exhibited to the witness a publication entitled "Italian Medic Gazetta," printed in the Province of Venice, dated 1862. An article appeared therein written by Dr. L. Mendini, an Italian physician. Dr. McGuigan was of the opinion that in the year 1862 the Italians were ahead, "I think, of many of the other countries of the world at that time in medical advancement and progress." In interpreting the article by Dr. Mendini, the witness said: "It discloses distinctly here the effects of iron and copper, both together and separate." Again, he interpreted the article of Dr. Mendini: "He concluded therefore, copper was beneficial in the treatment when he used it with iron sulphate."

The witness also interpreted an article by Dr. Albert Gonnet, a French physician, which article was printed in the year 1878. Such article was a thesis on the use of copper and its compounds in Toxocology and Therapeutics. The witness said that the author referred to copper salts, to iron salts, and the two together, and that one aids the other.

An article in an Italian publication was also shown to the witness. Such article was written by Prof. Cervello, and its publication was in the year 1894. It pertained to the treatment of anemia and made special reference to the use of copper and iron as a therapeutic agent. The witness quoted from the article the following: "Copper would therefore have, in common with iron, this therapeutic indication; a comparative study of the efficacy of these two metals is reserved for a later work."

The witness interpreted that publication as disclosing an improvement in an anemic condition "by means of the combined effects of copper and iron."

Many other publications made in Italy long prior to plaintiff's discovery were exhibited to the witness, and, in reference to them, the witness said that such articles disclosed that the authors "had an understanding of the conjoint use of copper and iron." The witness said, "I think

any pharmacologist, including myself, would look on it that way."

A foreign publication made in 1900 was shown the witness. He said such article disclosed the treatment of anemia with salts "of the elements of copper and iron." A thesis written by Prof. Bouillat, in Paris, printed in the year 1901, was interpreted by the witness. Concerning it, he was asked: "Then to recapitulate, in your opinion this article discloses conjoint use of copper and iron for the treatment of a disease of the type of anemia?" Answer, "Yes."

On cross-examination, Dr. McGuigan said that pharmacologists had not mentioned the utilization of iron by copper sulphate as a therapeutic agent "until Hart's work came out."

Dr. Logan Clendening, Kansas City, Mo., testified on behalf of the defendant. Dr. Clendening had had a large and extensive medical practice, extending over a period of many years. He is an author of great distinction, having written many articles for publication on medical subjects, and is the author of several books pertaining to the human body, its care, and medical treatment. He was familiar with the various anemias, both primary and secondary, and illustrated and described the blood stream, its contents, and the development thereof. He interpreted the patent in so far as it appertained to the art of medicine. He gave his interpretation of a large number of foreign publications exhibited to him, and concerning them testified as follows:

The thesis by Dr. Albert Gonnet, published on February 2, 1878 (Exhibit C), discloses "a therapeutic agent which includes copper sulphate and salts of iron." The witness read the following from said thesis: "We therefore maintain that the marvelous cures achieved must be attributed to the copper salts as well as to the iron." Relative to this quotation, the witness said: "Since he has mentioned copper sulphate above and copper sulphate is a copper salt, I take it he includes copper sulphate in that wording."

The following question and answer were propounded and returned by the witness: "Q. Does the combination of the copper sulphate and salt of iron which you say is disclosed in this publication, Exhibit C, render effective the utilization of said salts for correcting the anemic condition of the blood? A. According to

the author it does." Later on the witness said that said publication disclosed the elements of iron and copper were combined to render effective the utilization of said salts for increasing the hemoglobin content of the blood.

Concerning the advancement and progress of medicine in Italy, the doctor said: "Italian medicine has always been the most virile and brilliant medicine of the modern world. It was in 1862, it was for three hundred years before that, and still is."

In relation to Dr. Mendini's article, published in 1862, the witness testified that such publication disclosed a therapeutic agent for anemia which includes copper and salt of iron. The following question and answer were given in relation to the Mendini thesis: "Does the combination of the copper and the salt of iron which you say are disclosed in this publication, exhibit B, render effective the utilization of said salt of iron for correcting the anemic condition of the blood according to the disclosure of the publication? A. Yes."

Relative to the decision by Prof. Cervello in a publication marked Defendant's Exhibit D, the witness read therefrom the following: "Copper would therefore have, in common with iron, this therapeutic indication." The interpretation put by the witness on said article was that copper conjointly used with iron was a therapeutic agent in the treatment of anemia. Many other foreign publications were exhibited to, examined, and read by the witness, and he gave them the same interpretation.

On rebuttal, the plaintiff sought to overcome the testimony of these experts by Dr. Robert C. Lewis, a biochemist of Denver, Colo., and Dr. C. A. Elvehjem, a biochemist of Madison, Wis.

Dr. Lewis was an author of many articles in the scientific field, and at the present time is at the head of the Department of Biochemistry at the University of Colorado, School of Medicine. There was exhibited to him many articles, theses, etc., which he interpreted as showing a 'disagreement with the conclusions reached by the authors of the several Italian publications heretofore mentioned. Moreover, he did not believe that the interpretation put by the defendant's witnesses on said articles was accurate.

In reference to the thesis by Dr. Albert Gonnet, Exhibit C, published in 1878, this question was asked and answer returned: "Doesn't it say that the copper salts added

their effect to the iron and thus it has become possible to cure the gravest cases of anemia? A. It says that, yes."

Dr. Elvehjem is connected with the University of Wisconsin, and is specially engaged in research work in biochemistry and nutrition. He agreed with the witnesses for both the litigants that iron and copper in combination were effective in the treatment of anemia.

It is unnecessary to discuss the testimony of other witnesses, as such testimony was general, and on both sides such testimony tended to show that the element iron in combination with the element copper was useful as a compound as a therapy for an anemic condition of the blood, both for human blood and that of the lower animals.

1. Section 31, title 35, U.S.C. (35 U.S. C.A. § 31), relating to the subject of "patents" specifies the conditions upon which an inventor or discoverer may have a patent: If such person has invented or discovered any new and useful "composition of matter," he may secure a patent therefor, provided that it has not been described in any printed publication in any foreign country more than two years prior to his application. It may be stated this section classifies a foreign patent as of no greater weight or force than a foreign publication; either one may be sufficient to defeat a domestic patent. If, therefore, the publications in question describe plaintiff's invention or discovery, plaintiff's patent must be held invalid.

2. The validity of plaintiff's patent is presumed. This means, of course, that its utility and novelty must be assumed and the patent upheld unless the defendant carries the burden of establishing previous full description in a foreign publication, and this must be done clearly and to the entire satisfaction of the court. "The presumption arising from the granting of the patent is that it is a patentable novelty, which can only be overcome by clear proof to the contrary. * * * The patentee has the right to rely upon the presumption the patent affords." Sodemann Heat & Power Company v. Kauffman (C. C.A.) 275 F. 593, 596; Stead Lens Company v. Kryptok Co. (C.C.A.) 214 F. 368.

As stated by Judge Chesnut of the District of Maryland in Langston Co. v. F. X. Hooper Co. (D.C.) 8 F.Supp. 613, 616: "In a number of cases it has been held that the prior art to anticipate an in-

932

vention must be clear and definite and particularly so where the prior patents relied on are foreign patents and when they have not been reduced to commercial practice." See, also, Donner v. Sheer Pharmacal Corporation (C.C.A.) 64 F.(2d) 217, 220. The latter case is from the Eighth Circuit, Judge John B. Sanborn, Circuit Judge, wrote the opinion for the court: "In order to be an anticipation of a United States patent, a foreign patent must disclose the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of experimentation." In Schuricht v. McNutt v. Burns (D.C.) 26 F.(2d) 388, 389, one of the district judges in Connecticut said: "The rule as to anticipation by a foreign patent is very strict, and is well expressed in the decision in Permutit Co. v. Harvey Laundry Co. (D. C.) 274 F. 937." In the Permutit Case, the court said: "Inasmuch as controlling importance is attached by defendants to what is described and illustrated in the prior foreign publications, the rule as to them may be stated here. Foreign publications, to constitute them anticipations of a later invention, must disclose a complete and operative structure, and, indeed, the description given must be sufficiently clear and definite and understandable to enable persons skilled in the art or science to which the invention or device belongs to practice and construct it."

█ 3. It follows from the foregoing that a proper decision of the case requires an ascertainment whether the publications interposed by the defendant as a defense clearly and satisfactorily afforded a description of the invention and clearly, definitely, and in an understandable way pointed out to persons skilled in the art the compound or composition in such a way as to enable them to practice it. Or, as stated in Lektophone Corporation v. Colonial Radio Corporation (D.C.) 46 F.(2d) 131, loc.cit. 135: "Foreign publications which are relied upon as anticipations must of themselves disclose clearly and completely the patented combination."

There was entire agreement on both sides of the case that copper sulphate and a salt of iron combined constitute a compound useful as a therapeutic agent in the treatment of anemia.

Claims 1, 4, 5, and 6 of the patent were in controversy. The last three are variations of claim 1, which is as follows:

"1. A therapeutic agent for use in connection with the treatment of anemia, including copper sulphate and a salt of iron combined to render effective the utilization of said salts for correcting the anemic condition of the blood." Claims 2 and 3 are not in controversy.

An examination of these claims fails to disclose any reference either to dosage or to the proportion of the two elements in combination. The patent is designed to cover a compound or composition of matter of the two elements, copper sulphate and a salt of iron. The publications mentioned in the evidence in that regard appeared to be full, clear, and exact. This is true for the reason that some of the authors were engaged in the medical practice and they were then practicing the art to which the patent appertains. They used the identical elements in combination as covered by the patent. Moreover, the witnesses who testified in relation to said publications were men engaged in the art to which the patent appertained.

Dr. McGuigan is a pharmacologist of note and distinction. It was his business to understand the art of combining elements for therapeutic purposes. The publications exhibited were studied by him for the purpose of enabling him to determine the efficacy of various compounds. He therefore was best able to interpret the meaning of the publications in question. Moreover, even to the layman, such publications apparently made clear that a combination of copper sulphate and a salt of iron constitutes an effective therapeutic agent for anemia.

Dr. Clendening has not only practiced the art of medicine for many years, but he has written extensively for publication on various phases of medical practice, including the treatment of the human body. He readily deduced from all of the articles in question that the same set forth clearly, precisely, and definitely the use of a therapeutic agent containing salts of the elements of iron and copper in the treatment of anemia.

In Re Smith (Cust.&Pat.App.) 76 F. (2d) 142, loc.cit. 145, the court held that foreign patents are properly considered in determining whether claims of application for patent are anticipated.

In the case of Midland Flour Milling Co. v. Bobbitt, 70 F.(2d) 416, 418, the Eighth Circuit Court of Appeals stated

the law in respect of printed or public disclosures as follows: "To be effective as an anticipation, the printed or public disclosure of the subject of patent must be in such terms as to enable a person skilled in the art of the science to which it pertains to make, construct, and practice the invention without assistance from the patent which it is said to have anticipated."

In the case at bar, the publications were written by persons engaged in the practice of medicine and from the testimony of Dr. Clendening, any one engaged in the practice of the medical art could have practiced the disclosure as made in such publications. In the Bobbitt Case, supra, the court held that: "If the device as disclosed by this publication would, if produced after plaintiff received his patent, be an infringement, then it would seem that its earlier disclosure would be an anticipation."

Precisely, in the case at bar, if Dr. Mendini, Dr. Gonnet, or Prof. Cervello had employed the therapeutic agent consisting of a combination of the salts of the elements copper and iron in their practice after the issuance of the patent, they would have been infringers.

The law is well stated in Seymour v. Osborne, 78 U.S. (11 Wall.) 516, loc.cit. 555, 20 L.Ed. 33, where the court said: "Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. Mere vague and general representations will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use. Whatever may be the particular circumstances under which the publication takes place, the account published to be of any effect to support such a defense, must be an account of a complete and operative invention capable of being put into practical operation."

In the instant case, Dr. McGuigan and Dr. Clendening were the only witnesses skilled in the art to which the patent appertains. These witnesses interpreted publications also appertaining to their art, and in such publications they discerned the exact and precise combination covered by the patent. The publications disclosed that those who were engaged in a similar art had practiced it, and such publication showed how these witnesses could also practice it.

The plaintiff produced no witnesses who were engaged in practicing the art to which the patent appertained.

In view of the above, the conclusion seems inescapable that plaintiff's patent was anticipated by numerous foreign publications, and that therefore the composition of matter covered by the patent is not within the provision of law which grants a monopoly for a period of years upon an invention or discovery. Plaintiff's bill should be dismissed.

Counsel for the defendant will prepare and present an appropriate decree for the dismissal of said bill.